[Crim. No. 3508.  In Bank.—June 30, 1932.]

THE PEOPLE, Respondent, v. HARRY FULLER GOOLD
et al., Appellants.

Mier & Schaper, for Appellants.

U. S. Webb, Attorney-General, John D. Richer, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy Chatfield, Deputy District Attorney, for Respondent.

LANGDON, J.—This is an appeal from a judgment of conviction of defendants, after a verdict of a jury, of the crime of murder in the first degree. Defendants were sentenced to death. This appeal also seeks to review orders of the court denying the motion of each defendant for a new trial.

Defendants were charged with having, on April 30, 1931, murdered William Fuller. Defendant Paciga pleaded not guilty. Defendant Goold pleaded not guilty and not guilty by reason of insanity.

From the evidence it appears that the victim, Fuller, lived in an apartment in the city of Los Angeles. On May 1, 1931, he was found lying in his bed, bound and gagged. Death had been caused by strangulation by the gag, with

contributory concussion of the brain resulting from blows received. Several witnesses, including the manager and other occupants of the apartment house, testified that defendant Goold had entered Fuller's apartment on several occasions prior to April 30th. Goold was arrested in San Diego on May 2d, and made a complete confession of the crime to the police officers. He said that he had been living with Fuller about three weeks, having met him at the Midnight Mission. On the afternoon of April 30th, Goold met Paciga and they decided to put into execution a previously discussed plan of robbing Fuller on his pay day. Fuller came in about 6 o'clock in the evening. Goold held him while Paciga struck him until he was almost unconscious. They then bound and gagged him, and took his pocket-book, containing about $50. Paciga gave Goold $20 and left. Shortly thereafter Goold left. The next day he was in Santa Ana and from there wrote a letter to his parents telling them that he had robbed a man named Fuller with whom he was staying, and that if caught he would get one to ten years for it. Then he left for San Diego, where he was apprehended, and upon questioning, gave the detailed recital of the facts surrounding the crime, of which the above is a summary.

Defendant Paciga was discovered in Mobile, Alabama, and there arrested. He also made a complete confession of the crime. At the trial Paciga testified as a witness on his own behalf, repeating substantially the matters stated in his confession. The only points in which the stories of Goold and Paciga differ relate to their relative participation in the enterprise. Paciga testified that they intended to rob and did rob Fuller, but that he never intended to kill him. This is borne out by the record. The tragedy which occurred was not within the original plans of the parties. It also appears clearly from the evidence that Goold was the instigator of the crime, took the lead, and directed all of the acts.

The major points of appellants concern the rulings of the court in receiving in evidence the confessions of defendants. Counsel for defendant Goold offered testimony to prove that he was, at the time of making the confession, so mentally deficient as to be unable to understand its meaning. This offer was made at the time the confession was

about to be read in evidence, with the object of excluding it altogether. The court ruled that such testimony could be introduced later as part of the defendant's case. This was done and the court fully instructed the jury as to their power to disregard the confession if they found it to be made by a person mentally incompetent. Hence, the question is simply one of the order of proof, and we see no prejudicial error in the ruling. The proper foundation was laid as to the free and voluntary making of the confession, and the attack upon it, on the ground of insanity, need not necessarily have preceded the reading of it. The case of *People* v. *Dias,* 210 Cal. 495 [292 Pac. 459], does not require a different order of proof from that followed here, and the only essential fact is that ultimately the jury were permitted to consider the evidence of such incompetency under proper instructions. (See *People* v. *Lehew,* 209 Cal. 336 [287 Pac. 337].)

█ It is further contended on behalf of both defendants that neither confession was admissible because of lack of proof of the *corpus delicti.* In this connection it is said that although the homicide was clearly proved by other evidence, the facts showing it to be first degree murder were not, because the robbery was established solely by the extrajudicial confessions and admissions of the defendants. This is not the case. Paciga was found with the billfold of the deceased in his possession; and this, coupled with the evidence of the struggle and the immediate flight of both parties, was sufficient as a preliminary showing of the homicide while engaged in the commission of a felony, namely, robbery. The preliminary showing was later substantiated by Paciga's testimony on the stand. We are satisfied that the confessions were properly admitted.

█ The other allegations of error hardly require mention. Criticism is made of the refusal of the court to permit separate trials for each defendant, to permit trial by a different jury of the issue of sanity in the case of defendant Goold, and to permit counsel for said defendant to open and close the argument on this issue. These matters were, of course, discretionary with the court, and no abuse of discretion is shown. The specifications of improper instructions and refusal to give instructions are without merit; and the two instances of alleged misconduct on the part of

the district attorney were immediately followed by proper admonitions by the court, which cured any prejudicial effect they might otherwise have had. We have mentioned these alleged errors very briefly, for the reason that the record is so clear on the facts respecting the commission of the crime, that even serious errors might not warrant a reversal, under the constitutional rule. (Const., art. VI, sec. 4½.)

A final contention made on behalf of defendant Goold is that the verdict of the jury finding him sane is not supported by the evidence. In this connection the record discloses that he had from early childhood been considered mentally defective, and had been addicted to various forms of sexual perversion, which also appear in his relationship with Fuller. He had previously been twice confined in the state insane asylum at Norwalk, as a victim of dementia praecox. Doctors Steele, Carter and Bowers of the county lunacy commission, testified that he was insane during the times of the commission of the crime, the making of the confession, and the trial. Relatives, friends and acquaintances gave testimony to the same effect. Nevertheless, on March 14, 1931, less than two months before the murder, he had been discharged from the asylum as cured, and two of the alienists appointed by the court, Doctors Keyes and Blank, were of the opinion that he was sane. From the entire record, we are unable to say that the evidence established the legal defense of insanity, i. e., the inability to distinguish right and wrong. In the popular meaning of the term, Goold may perhaps be insane; certainly his mental and moral defectiveness stands out in the record. But, as this court has many times pointed out, it is not every such deficiency which comes within the legal meaning of insanity, and the matters urged by counsel on his behalf are really pleas for clemency, which should properly be directed to the chief executive.

The judgments and orders appealed from are affirmed.

Curtis, J., Shenk, J., Seawell, J., Waste, C. J., and Preston, J., concurred.