[Crim. No. 4791. In Bank. Aug. 6, 1947.]

THE PEOPLE, Respondent, v. FRANCIS PAUL BARNES, Appellant.

William B. Neeley, Public Defender, for Appellant.

Fred N. Howser, Attorney General, and Frank Richards, Deputy Attorney General, for Respondent.

TRAYNOR, J.—Defendant was found guilty on one count of murder in the first degree, nine counts of robbery, seven counts of kidnaping for the purpose of robbery and three counts of rape. The jury's verdict that defendant was guilty of murder in the first degree was without recommendation as to penalty. Defendant waived his right to a trial by jury on the issue of sanity, and the trial court found him sane. This appeal is an automatic one from the judgment imposing the death penalty for murder in the first degree.

Defendant attacks none of the verdicts of guilty for the crimes charged in the amended information except that for murder. It is therefore unnecessary to review in detail defendant's conduct relating to the other crimes.

Defendant contends that the trial court erred in its ruling regarding the testimony of certain psychiatrists. He also contends that the trial court erred in refusing to instruct the jury to determine whether certain confessions of defendant were free and voluntary, and to weigh and determine the effect and credibility of the confessions.

The crimes with which defendant was charged were committed between the months of March and August of 1946. During that time defendant robbed five women besides decedent, and raped and robbed three others.

Decedent was a dressmaker, 66 years of age, whose establishment was located in an office building in Los Angeles. Defendant confessed to a police officer that he killed decedent. According to this confession, defendant entered decedent's establishment carrying gloves in his pocket and a pistol in his waistband. He had the "idea of holding someone up." Decedent asked him what he wanted and he replied that he wanted a glass of water. Decedent brought him a glass of water and after drinking it, he noticed another woman in the room. He therefore excused himself and went outside into the hall where he sat on the steps until he saw the other woman leave. Then he took out his pistol and inspected it as he reentered decedent's office. When decedent saw the pistol she became frightened and screamed; defendant, in turn, "got kind of jittery" and the pistol went off. He started to escape the way he entered, but someone shouted at him and he then decided to use another exit. As he retraced his steps he noticed decedent's purse through the open doorway. He took the purse and ran to his automobile and then drove to an empty lot and ransacked the purse, throwing it away after removing the money.

The evidence shows that decedent was shot through the neck. She must have been shot at close range, for the entrance wound of the bullet was marked with powder burns. Two witnesses identified defendant as the man they saw near decedent's room shortly before and after the shot was fired. Photographs taken of the scene after the killing reveal an overturned glass of water near decedent's body. In addition to the bullet wound there was a gaping wound on decedent's scalp, a bruise over her eye, bruised knuckles on her left hand and still another bruise on her right leg, midway between the knee and ankle.

On August 28, 1946, defendant was stopped by a motorcycle patrol in Los Angeles, apparently for the violation of a traffic ordinance. As the officers approached defendant's automobile, they observed that he had opened a door and that some rags had fallen to the street. Defendant put the rags back into the automobile and began searching under the seat. He told the officers that he was looking for his driver's license.

The officers searched the automobile and found a knife buried in the rags. Defendant was then ordered to drive his automobile to the police station while they followed. When defendant's automobile started forward, one of the officers noticed a pistol lying on the pavement near where defendant's vehicle had stopped. He picked up the pistol and another officer followed defendant, who had meanwhile speeded up in an apparent attempt to elude the officers. The pursuing officer fired shots but defendant crashed his automobile against a retaining wall and escaped. He was arrested later by the police.

Defendant admitted to the police that he had shot decedent. He led the police to a vacant lot where he had discarded decedent's purse after removing the cash therefrom. A ballistics expert identified the pistol found near defendant's automobile as the one that had fired the bullet that killed decedent.

At the trial, defendant's statements to the police were admitted after his counsel examined two psychiatrists. The first of these witnesses testified that defendant had a psychopathic personality and "was overwhelmed by guilty feelings that he had in regard to the commission of his deeds. . . ." The witness stated that defendant had a tendency toward self-accusation and "was emotionally driven to make certain statements regardless of the possible effect they could have." He testified, however, that defendant knew the full meaning and effect of the questions put to him and of his answers. The witness found defendant to be "absolutely sincere and honest" but could "conceive of the possibility that he added some details that are incriminatory and that are bad for him, or stressed them in such a way that they might make his case worse than it would otherwise have been. I mean I can conceive of this possibility; I can't say that that is what happened."

The other psychiatrist also testified that defendant had a psychopathic personality. He found that defendant "would wish to be as truthful as he could to support his belief that he should be placed under arrest because he had committed certain crimes for which he believed he should be punished and . . . in that state of mind he was in at that time . . . he would be in a more suggestible state of mind, he would reply more readily or accede more readily to what would be asked of him that would tend to incriminate him." The witness refused to state that defendant would add untruths to his

story; in his view defendant "probably would be more suggestible and be perfectly willing to make things a little worse than they were provided he were asked the question in the right way."

At this point testimony was elicited from the witness that led to a ruling by the trial court that defendant regards as erroneous. Defendant's counsel asked the witness if defendant exhibited paranoid trends. The witness replied that he had. Counsel then asked, "Q. A paranoia is a form of insanity, is it not? A. Paranoia is, yes. Q. And paranoid trends, is that a trend towards that state of paranoia? A. No, it is like, similar to but not identical with. That is, the term really means like, suggesting it." The defense then turned the witness over to the district attorney for cross-examination, and the district attorney asked the witness if he found defendant sane. The defense objected to this question but the district attorney, upheld by the court, contended that since the defense had injected the subject of paranoia into the record the question was proper. The witness answered the question, stating that defendant was not insane and knew the difference between right and wrong. He also testified that defendant had "fully appreciated the nature and consequences of the statements" he had made to the witness.

Upon redirect examination, defense counsel asked the witness, "You distinguish the difference between what you said with reference to insanity to the extent that a person doesn't know the nature and quality of his acts from medical insanity, based upon medical science?" This question was objected to and the court sustained the objection.

Defendant contends that since the trial judge allowed the district attorney to question the witness as to sanity, he should not have sustained the objection to the foregoing question asked on redirect examination. There is no error here. The defense was attempting to show by means of the testimony of psychiatrists that defendant's confession was unworthy of belief because of his mental condition. When the defense questioned the psychiatrist regarding paranoid trends there was no attempt to relate the questions to defendant's understanding of the meaning and effect of his statements. The result of the defense's concluding questions was undoubtedly to leave the jury with the impression that defendant was insane or bordering on insanity; hence, the prosecution was justified in clarifying the witness's meaning.

Defendant's attempt, on redirect examination, to inject the question of the distinction between legal insanity and medical insanity was clearly improper. There was no need to engage in a general discussion of insanity. Defendant does not contend that he was prevented from proving that he did not fully know the meaning and effect of his confession. Nor was there any attempt to prevent the defense from showing defendant's mental condition. The trial court merely put an end to questions that would have evoked general answers not pertinent to the specific issue then to be decided.

After the psychiatrists testified, the district attorney introduced a police witness who had received the confession. This witness was examined for the purpose of showing that the confession was freely given. In the course of this examination, however, counsel for the defense stipulated that "there is no intention or indication of intention to intimidate," and that no "form of coercion was used by any officer of the Los Angeles Police Department upon this defendant," and that no promises were made to defendant. Finally, the defense counsel stated: "I want to make my position very clear in that regard." The district attorney accepted the stipulation in lieu of laying a foundation to show the free and voluntary nature of the confession.

Defendant contends that the trial court erred in refusing to give an instruction requested by defendant relating to the confession. This instruction was to the effect that the jury should decide whether the confession was freely and voluntarily made. The refused instruction further stated: "You have the right to reconsider the question as to whether the same was voluntary or not, and in this connection you are the judges of the effect and value of evidence and the credibility of witnesses as the same pertains to such alleged statement or confession the same as to all other evidence and all other witnesses in this case."

The trial court's refusal to give the foregoing instruction, as well as a similar one tendered by the prosecution, was expressly based upon defendant's stipulation. Defendant contends, however, that since he was shown to have a "subnormal mentality, amounting to a psychosis," he was entitled to an instruction that the confession was not binding upon the jury and that the determination of the voluntary character of the statements, as well as the determination of the weight and credibility to which they were entitled, were for the jury to

decide. Defendant maintains that the jury was entitled to infer ''mental coercion.''

Under proper instructions, the jury is ordinarily permitted to come to an independent conclusion as to the voluntary nature of a confession. (*People* v. *Gonzales,* 24 Cal.2d 870, 877 [151 P.2d 251].) In the present case, however, defendant's stipulation that there was no ''form of coercion'' excused the district attorney from proving the voluntariness of the confession. Such a stipulation, in the absence of extraordinary circumstances, removes from controversy the question of coercion. (*State* v. *Marx,* 78 Conn. 18 [60 A. 690] ; *Commonwealth* v. *Desmond,* 5 Gray (71 Mass.) 80; see 9 Wigmore on Evidence, 3d ed., §§ 2588-2590.)

The defendant's stipulation that the confession was voluntary was not, however, a stipulation as to the truth of the confession. The voluntariness of a confession is one thing; the weight to be given that confession in the light of defendant's mental state is another. Experience has demonstrated that a confession may be entirely voluntary and yet not be entitled to much credence. (*People* v. *Lehew,* 209 Cal. 336, 342 [87 P. 337] ; *People* v. *Elder,* 55 Cal.App. 644, 648 [204 P. 29] ; *People* v. *Joyce,* 233 N.Y. 61, 68 [134 N.E. 836].) Juries are therefore usually instructed not only to make an independent judgment as to the voluntariness of a confession, but to decide whether or not the confession was true and made with the full knowledge of its meaning and effect. (*People* v. *Goold,* 215 Cal. 763, 766 [12 P.2d 958] ; *People* v. *Lehew, supra,* at p. 343.)

In the present case, owing to the stipulation, there was no instruction relating particularly to confessions. The members of the jury were instructed merely that they were the judges of the credibility of the witnesses and of the weight of the evidence. It would have been better practice to instruct them that they were the exclusive judges as to whether or not the confession was true. In a closer case than the present one it is possible that the jury might view the stipulation as bearing both upon the voluntary character of the confession and upon its credibility. The failure of the court to give such an instruction, however, did not prejudice defendant. The psychiatrists called by defendant to testify were unanimous in their conclusion that defendant fully knew the meaning of questions asked him and the meaning and effect of the answers he gave. Although these witnesses were of the opinion that defendant

might be unduly subject to suggestion, the record shows that when he confessed, he was unable to answer certain questions and categorically denied the commission of various acts charged by his victims. Furthermore, many of the important elements of the confession were corroborated by witnesses.

The evidence that defendant murdered decedent is sufficient to sustain the verdict independently of his confession of that crime. He was identified by two witnesses as the person near the scene of the crime at the time of the murder. The murder weapon was traced to him and he directed the police in the recovery of decedent's purse. A complete examination of the record reveals no error substantial enough to warrant a disturbance of the verdict or the judgment. (*People v. Gonzales, supra,* at p. 877.)

The judgment and the order denying defendant's motion for a new trial are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.