[Crim. No. 2041. Third Dist. Sept. 28, 1948.]

THE PEOPLE, Respondent, v. ROBERT MOORE et al., Appellants.

Clarence E. Todd, George E. Flood and Gordon W. Mallatratt for Appellants.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

THOMPSON, J.—Four defendants were jointly indicted, tried by a jury and convicted on one count for participating in a riot under section 404 of the Penal Code, and, under section 245 of that code, on several counts of assaults to do great bodily injuries by "throwing rocks" at different named persons. All defendants have appealed.

This is a companion suit with that of *People* v. *Bundte and Phillips, ante,* p. 735 [197 P.2d 823] in which our opinion was this day filed, to which we refer for further particulars. Both cases grew out of a labor dispute which resulted in a strike and picketing of two adjacent lumber mills in Mendocino County. The affray which is here involved is the same as one which was included in the Bundte case, except that this case is against different pickets who participated in a general plan of assaulting nonunion workmen with stones as they drove to the Richardson mill in their separate machines on February 4, 1947. The appellants' opening brief concedes that "defendants are admittedly members of a labor union and all the counts arose from alleged acts committed by defendants on picket lines in connection with a labor dispute between their union and certain redwood lumber companies in Mendocino County." Thirty or more pickets in a group met the nonunion workmen as they drove their cars into the entrance to the Richardson Lumber Company mill about 8 o'clock in the morning, and hurled large rocks at each of them. All defendants were among the attacking strikers. Windshields and windows of the cars were broken, and the cars were otherwise damaged. Some of the drivers received serious injuries which required medical treatment. Some of the men identified the strikers who hurled the rocks at them. Other workmen identified the defendants as persons who par-

ticipated in the affray and hurled rocks at particular drivers named in the several counts. In two or three instances the defendants were not identified as the particular strikers who actually threw the rocks at or who struck those drivers of cars.

All defendants were convicted of the first count of participating in a riot under section 404 of the Penal Code, and of count three charging an assault on Schwartz. Moore and Sherrard were also convicted of counts four, six, seven and eight. Pimentel was also convicted of counts three, six and eight. All defendants were acquitted of counts nine and ten. The defendants Moore and Sherrard were sentenced on conviction of the first count to the county jail for 180 days. Moore and Sherrard were sentenced on each count of assault of which they were convicted to state prison for the term prescribed by law, said sentences to begin at the expiration of the county jail sentence, and to run concurrently. McCoard and Pimentel were sentenced on conviction of the first count of riot to pay a fine of $250 each, or to one day of imprisonment in the county jail for each two dollars of said fines remaining unpaid. They were further fined $300 on each of the other counts of which they were convicted, or to serve imprisonment in the county jail one day for each two dollars thereof which was unpaid, to commence at the expiration of the sentence for riot, the terms to run consecutively. Each defendant was released on bond pending the appeal.

The defendants demurred to the indictment on the ground that it did not conform to sections 950, 951 and 952 of the Penal Code, and that felonies, to wit, assaults by means likely to result in great bodily injuries were united with the charge of a riot, which is a mere misdemeanor. The demurrer was overruled. That issue was determined in the previous Bundte trial.

The appellants also contend the court erred in overruling their motions for directed verdicts, to dismiss the indictment at the close of the prosecution's case, for a new trial and in arrest of judgment. It is also urged: That the court erred in refusing to strike out certain exhibits alleged to have been unsupported by the evidence, that certain counts failed for lack of evidence showing the particular defendant charged threw rocks at the individuals named therein, and that the court erred in giving to the jury an instruction based on section 31 of the Penal Code.

The transcript contains over 900 pages of evidence. We are of the opinion the verdicts returned against the four defendants and the judgment of convictions are amply supported by the evidence. Both the riot charged and the assaults of which the defendants were convicted occurred at the Richardson mill at about 8 o'clock on the morning of the 4th day of February. The defendants and other associates had been previously picketing that mill for several weeks. The number of pickets previously engaged was greatly increased on that morning. They greatly outnumbered the nonunion workers then engaged in the mill. At the time of the arrival of the workmen that morning, from 15 to 30 pickets had congregated on both sides of the roadway leading to the east entrance to the mill. Another group of pickets was stationed at another entrance to the mill. The evidence clearly indicates that the defendants and their striking associates were then engaged in a concerted plan to act together in the assaults and riot which occurred. The defendants were among them and active in the affray. As the nonunion workmen, consisting of nine men separately mentioned in the various charges of assaults, namely, Pullen, Schwartz, Gibson, Jackson, Wise, Henderson, Mays, Tennison and Ray, drove their automobiles to one or the other of the two entrances to the mill, they were each stoned by the assembled pickets. The stones varied from the size of an egg to that of a cocoanut. Windshields and windows were broken, and the cars were otherwise damaged. Some of the drivers were struck by the rocks and seriously injured, requiring medical treatment. Some of the stones were found in certain cars and were identified and received in evidence. Photographs of the cars were taken immediately afterward, showing the broken windows, and the dents in and damages to the cars. Those photographs were explained by witnesses and received in evidence after the foundation therefor had been adequately proved. After running the gauntlet, the drivers of some of the nonunion workmen's cars parked their machines and watched the stoning of other workmen as they entered the premises. Some of the drivers identified some of the pickets who threw stones at them. Two or three of them failed to identify the particular persons who threw the stones at them. Other workmen who watched the stoning of the men supplied that evidence. Pat Gibson, who was hit in the head with a large rock and seriously injured, testified that he was met by a large group of picketers at the entrance,

"more than there had been" before; that the defendant Moore said "there goes another one of them scab s-of-b's" and he threw a rock which broke Gibson's windshield and struck him; that Sherrard threw a rock which hit the back of his machine, and that Bundte and Phillips also hurled rocks at him. He said that Sherrard "called me a dirty —— —— scab bastard." Gibson said he parked his car near the mill and that, in company with another workman, he watched the stoning of other employees as they drove into the premises. He testified that he saw and identified each defendant, calling him by name, and also named other strikers who hurled rocks at Schwartz, Wise, Mays and Tennison. After the affray, Stanley Richardson, one of the mill owners, who was also stoned as he entered the premises just behind Mr. Schwartz, testified that he told the workmen to keep out of sight, and that he went out back of the mill and crept or walked through the brush a quarter of a mile to a neighbor's house and telephoned to Willits for an officer. The deputy sheriff, Reno Bartolomei, soon arrived. There was a dispute between the workmen and the strikers regarding the affray and about the damages to the machines. Gibson said that he then heard Moore and Sherrard say, "Bring the Sheriff's car around. We will do the same thing to them." Several of the strikers were pointed out to the officer by the drivers as among those who threw the rocks. The four defendants were so identified, and they were placed under arrest.

There is much argument in the briefs regarding the sufficiency of the identification of the four defendants as the particular ones who hurled rocks at each of the workmen charged by the indictment to have been assaulted. The defendants sought to impeach some of the witnesses in that regard by offering in evidence their testimony given at the former trial of Bundte and Phillips. We think the failure to mention all of these defendants in the Bundte case as having been seen to throw rocks is satisfactorily explained. These defendants were not charged with the offenses stated in the first indictment. We think the identification of the assailants in this case was satisfactorily established. Any discrepancy in the evidence of the two cases merely went to the weight of the evidence and credibility of the witnesses. Those were matters for the determination of the jury. Moreover, it does appear that the four defendants were acting together, and with their striking associates; to aid, abet and encourage all the strikers

present to make the assaults and to commit the offenses charged. Under section 31 of the Penal Code, the defendants were therefore principals in the commission of the offenses charged, whether they were actually identified as the particular individuals who hurled the rocks at each of the workmen.

We are of the opinion the court correctly instructed the jury substantially in the language of section 31 that "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed." (Pen. Code, § 31; *People* v. *Bundte, ante,* p. 735 [197 P.2d 823].) As we held in the last-cited case, we are satisfied that section applies to the facts of this case.

The only effort to justify the assaults upon the workmen with stones was testified to by the defendant Robert Moore. He said that the strikers were engaged in picketing the mill premises on account of labor trouble, and that about 15 of them were located at the eastern entrance to the mill; that when the first car arrived "we waved them down and told them there was a strike on and asked them if they couldn't see the picket line and to get out of there;" that the first car then turned around and left; that about 12 cars followed and four of them turned into the east entrance. In response to direct questions from defendants' counsel, Mr. Moore said they did not succeed in "flagging them down," and that the "third car tried to run over us. . . . Made a swipe towards us." He admitted that they threw rocks at the drivers of the cars who tried to run them down. But the evidence is very convincing that rocks were thrown at all the cars of workmen as they drove into the premises that morning. At least that question of defense was an issue for the determination of the jury. It was evidently decided adversely to the defendants.

The other defendants were called as witnesses, but none of them was asked any question regarding the facts or circumstances of the offenses with which he was charged.

There was no variance between the allegations of the indictment and the proof adduced with relation to the acts, conduct or weapons used in committing the assaults or the riot. No weapons except rocks were used. The foundation for receiving in evidence the rocks found in the cars or in their immediate vicinity, the photographs of the rocks and of the damaged automobiles, was satisfactorily laid. The court, therefore, did not err in refusing to strike those exhibits

from the record. The principles of law involved in cases under similar facts were fully discussed and determined in the Bundte case, which also included the same assaults which are involved in this case, except that those same acts were there charged against different named defendants.

On authority of the Bundte case, and the citations of law therein contained, we conclude that the court did not err in this action in overruling the demurrer to the indictment, or in denying defendants' motions for directed verdicts, for arrest of judgment, for a new trial, or to dismiss the indictment at the close of the prosecution's evidence.

■ There is no merit in appellants' contention that the court erred in denying their application for separate trials. Section 1098 of the Penal Code provides in part: ''When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials.'' It has been repeatedly held that a defendant so charged is not entitled as a matter of right to a separate trial. The question of the right to a severance of trial is addressed to the sound discretion of the trial court, with which decision we may not interfere, except upon a clear abuse of discretion. (*People* v. *Isby*, 30 Cal.2d 879, 897 [186 P.2d 405]; *People* v. *Goold*, 215 Cal. 763 [12 P.2d 958]; 4 Cal.Jur. 10-Yr. Supp., (1943 Rev.) § 268, p. 718; note 104 A.L.R. 1519.)

We are convinced the defendants received a very fair and impartial trial. The jury was fairly and fully instructed on all material issues. We are satisfied there was no miscarriage of justice.

The judgment and the order denying a new trial are affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for rehearing was denied October 13, 1948, and the opinion was modified to read as above printed. Appellants' petition for hearing by the Supreme Court was denied October 25, 1948. Carter, J., voted for a hearing.