[Crim. No. 5961.   In Bank.   Apr. 19, 1957.]

THE PEOPLE, Respondent, v. JOHN CALVIN TIPTON, Appellant.

James F. Thacher, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHENK, J.—This is an appeal by the defendant John Calvin Tipton from a judgment of conviction and from an order denying his motion for a new trial. He was charged by information with the murder of Oletta Camille Johnson. The jury found him guilty of murder of the first degree and the death penalty was imposed.

There is no dispute as to the facts surrounding the commission of the crime. Prior to trial the defendant made three recorded confessions, each consistent with the others. At the trial he testified that the confessions were substantially correct. It appears from his confessions and his testimony that he resided alone in cabin Number 1 of an apartment court in Costa Mesa; that Mrs. Johnson resided across the court from him in cabin Number 11 with her soldier husband; that on March 28, 1956, the defendant had spent the day and evening drinking beer in a local tavern; that he arrived at his cabin about 11 p. m.; that he removed his clothing except his shorts and sat on his bed thinking about ''sex''; that he had noticed

Mrs. Johnson in the courtyard previously; that he obtained a large knife from his kitchen and concealing it in his shorts, crossed the courtyard to Mrs. Johnson's cabin and knocked on the door; that it was his intention to obtain sexual satisfaction by force if necessary; that when Mrs. Johnson opened the door he pushed his way inside the apartment; that she ordered him to go away and when he refused she became frightened and ran into the bedroom; that he followed her in, threw her on the bed, placed a pillow over her face and stabbed her in the chest with the kitchen knife; that she thereupon ceased to struggle; that he cut and tore her pajamas from her body and then committed thereon an act of sexual intercourse.

Mrs. Johnson's corpse was discovered by her husband shortly after midnight when he returned from guard duty at a nearby military base. Her death was due to perforations of the heart and lung, and occurred within a few minutes after she was stabbed.

At the trial the defendant was represented by the public defender. He pleaded not guilty and not guilty by reason of insanity. After the jury returned its verdict of guilty as charged the defendant waived a trial by jury on the plea of insanity. Expert witnesses for both the prosecution and the defense testified that the defendant was legally sane at the time of the offense and the court so found.

There is no doubt but that the defendant's conduct constituted murder of the first degree, as a "wilful, deliberate, and premeditated killing," or one "committed in the perpetration or attempt to perpetrate . . . rape. . . ." (Pen. Code, § 189.)

It is contended by the defendant that the court committed prejudicial error by instructing the jury as follows: "The law of this state provides that every person guilty of murder of the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury that finds him guilty. If you should find the defendant guilty of murder in the first degree it will be your duty to determine which of the two penalties shall be inflicted, the death penalty or confinement in the state prison for life. If you should fix the penalty as confinement in the state prison for life, you will so indicate in your verdict, using a form that will be handed to you when you retire to deliberate, but if you should fix the penalty as death, you will not specify the death penalty in the verdict, and you will say nothing about punishment in the verdict. In determining which punishment shall be in-

flicted, you are entirely free to act according to your own judgment.''

The defendant himself requested an instruction in the same language as the foregoing. The theory on which he now claims that the instruction was prejudicial is that section 190 of the Penal Code makes it the function and responsibility of the jury to select and to designate in its verdict which of the two punishments prescribed by that section shall be imposed in a given case; that by failing to expressly designate a particular penalty, the function is removed from the jury and conferred on the court, and that the court is not competent to fix the penalty.

The defendant's contention is not new. The instruction has been approved on numerous occasions but not without criticism and recommendations that it be not given. (*People* v. *Friend,* 47 Cal.2d 749, 771-772 [306 P.2d 463]; *People* v. *Brust,* 47 Cal.2d 776, 789-790 [306 P.2d 480]; *People* v. *Bollinger,* 196 Cal. 191, 204-205 [237 P. 25].) However, the instruction in and of itself has never been held to be erroneous. (See *People* v. *Crooker,* 47 Cal.2d 348, 357 [303 P.2d 753] [tried before our decisions in the Friend and Brust cases] and cases therein cited.) And when as in the Brust case and in this case nothing otherwise appears in the record of the trial from which the jurors might be confused or placed in doubt as to their discretion and duty in fixing the penalty a just cause for reversal is not shown.

■ It is next contended that the court committed prejudicial error in refusing to instruct the jury on the question whether the defendant's confessions were freely and voluntarily made. It is conceded that neither force nor threats of physical abuse were employed to obtain the confessions, but it is contended that due to the defendant's emotional instability and low mentality he was not capable of coping with the extended questioning and accompanying psychological effects thereof which preceded his first confession.

It appears that prior to his arrest the defendant voluntarily agreed to meet a police officer and go to a military base to take a lie detector test or to talk to the operator of the detector. The defendant met the officer at 9:30 in the morning of the appointed day, having arranged with his employer to be absent from work on that day. He had conversations with law enforcement officers on that day, but was under no restraint at any time. Three or four hours were spent explaining the lie detector to him and an hour and a half taken

for dinner. At 7:30 p. m. the defendant admitted his guilt. Commencing about 9:48 p. m. he made a detailed statement containing the confession, which was repeated in material parts at 10:40 p. m. At about 10:30 the following morning he made a third statement, ending with the declaration that he was glad that it was all over and to have it off his conscience. Before the confessions were introduced in evidence there was preliminary proof that they were voluntarily made. Thereafter the defendant testified in response to interrogations by the trial judge that his statements were freely and voluntarily made; that no threats, duress or force were used, and that no offers of immunity were extended to him as an inducement in making his confessions. As stated, his testimony as a witness corroborated his prior confessions. No instructions designed to submit the question as to whether the confessions were voluntarily made were requested by the defendant, although they were requested by the prosecution.

In view of the record presented there is no reason to conclude that the defendant was prejudiced in any manner by the failure of the court to submit the question of the voluntary nature of the confessions to the jury. (See *People* v. *Wolfe,* 42 Cal.2d 663, 669-670 [268 P.2d 475] ; *People* v. *Byrd,* 42 Cal. 2d 200, 210-211 [266 P.2d 505].)

It is finally contended that the circumstances of the defendant's detention, interrogation, and confession were such that the admission of the confessions denied him due process of law. This contention is based primarily on the claimed failure of the investigating officers to have obtained a warrant for the defendant's arrest prior to the questioning which resulted in the confessions, and an asserted unnecessary delay in taking the defendant before a magistrate. There is nothing in the record to support a claim of a denial of due process. The record indicates that the defendant went willingly with the officers by prearrangement, and that he was free to leave at any time and to communicate with whomsoever he chose. There is no showing that a warrant had not been issued, or that the defendant had not been advised of his right to counsel and his right to remain silent, or that he was not within proper time taken before a magistrate. However, a confession is not rendered inadmissible by a failure to advise a suspect of his right to remain silent, of his right to counsel and that his statements may be used against him (*People* v. *Hoyt,* 20 Cal.2d 306, 314 [125 P.2d 29]), or by an absence of a suspect's counsel and friends (*People* v. *Aguilar,* 140 Cal.App. 87, 94

[35 P.2d 137, 142], or by a delayed detention, where the confession is not the product of that detention (*Rogers* v. *Superior Court,* 46 Cal.2d 3, 10 [291 P.2d 929]) or by a low emotional and mental stability on the part of the suspect if he is nevertheless capable of understanding the meaning and effect of his confession (*People* v. *Isby,* 30 Cal.2d 879, 897-898 [186 P.2d 405]). Such matters may be taken into consideration in determining whether a particular confession was voluntarily made. In the present case the voluntary nature of the confessions appears without question from other evidence.

Upon a review of the record no good reason is presented to justify a reversal.

The judgment and the order denying a motion for a new trial are affirmed.

Gibson, C. J., Carter, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

Appellant's petition for a rehearing was denied May 15, 1957.