[Crim. No. 27955. Second Dist., Div. Two. Dec. 15, 1976.]

In re NORMAN H., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
NORMAN H., Defendant and Appellant.

## COUNSEL

Gayle L. Dukelow, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth, and M. Howard Wayne, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BEACH, J.—On July 28, 1975, the Probation Officer of Los Angeles County filed a petition that alleged appellant came within the provisions of Welfare and Institutions Code section 602 in that he had violated Penal Code sections 187 (murder, count one), 459 (burglary, count two), and 487, subdivision 3 (auto theft, count three). Appellant denied the allegations and was ordered detained pending psychiatric examination.

A hearing began on September 11, 1975. The court sustained the petition and found appellant to be a person described by Welfare and Institutions Code section 602. The court ordered him detained.

Appellant was declared a ward and committed to the California Youth Authority. He appeals from the judgment.

FACTS:

Appellant was solicited to burglarize Elaine Reed's apartment by another minor, Dexter Brooks. Brooks and appellant went to the apartment and once entry had been gained, Brooks armed himself with a butcher knife. Brooks entered Elaine Reed's bedroom and stabbed her in the chest. The apartment was then ransacked. After taking the victim's purse, both minors went to the garage and stole the victim's car. They used the car keys found in the purse to drive the vehicle to Georgia.

Elaine Reed died as the result of the stab wound to her heart.

Appellant was arrested in Georgia for a speeding violation while driving the victim's car. Appellant was detained when it was learned the car was stolen and appellant was suspected of a homicide.

Officer John Marzullo interviewed appellant in county jail in Columbus, Georgia. He advised appellant of his right to remain silent; that anything he said could and would be used against him in a court of law; that he had a right to an attorney; and, if he could not afford one, an attorney would be appointed without charge before questioning. Appellant said he understood his rights, would talk without an attorney, and agreed to make a statement. At no time did he indicate he did not want to talk or that he wanted a lawyer.

In three subsequent conversations appellant was readvised of his rights and in each instance waived them.

Appellant, on separate occasions, confessed to participating in the burglary-killing and the theft of the vehicle.

CONTENTIONS ON APPEAL:

1. The appellant's level of mental capacity rendered him incapable of understanding the meaning of the terms used in the *Miranda* admonitions given to him, and, thus, appellant was incapable, as a matter of law, of giving a knowing and intelligent waiver of those rights.

2. The trial court abused its discretion in failing to continue the disposition hearing and temporarily placing appellant at a Youth

Authority Diagnostic Center for recommendations as to appellant's suitability for commitment.

DISCUSSION:

1. *Appellant's subnormal intelligence did not bar admission of his confession.*

Appellant contends the court committed error by admitting his confession. He argues his intelligence was so low as to preclude an understanding of the *Miranda* advisement, and thus a knowing waiver of rights was impossible.

A suspect, having been advised of his *Miranda* rights, may waive them "provided the waiver is made voluntarily, knowingly and intelligently." (*Miranda* v. *Arizona* (1966) 384 U.S. 436, 444 [16 L.Ed.2d 694, 706-707, 86 S.Ct. 1602, 10 A.L.R.3d 974].) The determination that such a waiver occurred will not be disturbed upon appellate review unless it is palpably erroneous. (*People* v. *Robinson,* 274 Cal.App.2d 514, 520 [79 Cal.Rptr. 213].)

A confession of a crime is not inadmissible merely because the accused was of subnormal intelligence, although subnormal intelligence is a factor that may be considered with others in determining voluntariness. (*People* v. *Lara,* 67 Cal.2d 365, 386 [62 Cal.Rptr. 586, 432 P.2d 202].)

*People* v. *Isby,* 30 Cal.2d 879, 897-898 [186 P.2d 405], held the fact appellant was feeble minded; near the imbecile classification; and although twenty-six years of age, had a mental age of eight years and eight months, did not by itself bar admission of his confession. In *People* v. *Tipton,* 48 Cal.2d 389, 393-394 [309 P.2d 813], the court held that low mentality does not prevent an understanding of the meaning and effect of a confession. (See also *People* v. *Goold,* 215 Cal. 763 [12 P.2d 958]; *People* v. *Rucker,* 11 Cal.App.2d 609 [54 P.2d 508]; and *People* v. *Boyington,* 3 Cal.App.2d 655 [39 P.2d 867].)

Not only from the officer's testimony, but from appellant's own testimony there is evidence that appellant knew at the time the police

spoke with him that he did not have to talk with them if he did not want to and that he could get an attorney if he wanted one. He knew what he said could be used against him ("He [the police officer] said it could be used in court") although he did not believe it actually would be used. Appellant wanted to talk to the police ("I wanted to tell them what happened") apparently since he did not physically do the killing and believed he would be in less trouble if he told what had occurred.

Appellant's brother-in-law had prior experience with criminal proceedings and had told appellant that a lawyer was also called an attorney and could help him. Appellant had previously watched court proceedings involving his brother-in-law. Appellant at no time indicated he wanted an attorney to help him or that he did not want to talk to police. He felt he would be in less trouble and wanted to blame his codefendant by telling his side of the story.

We have carefully read the record and were especially attentive to testimony cited by counsel for appellant as indicative of appellant's lack of intelligence and lack of understanding. The evidence reveals a very unintelligent 15-year-old boy. His intelligence quotient was that of about a 7 or 8 year old (I.Q. 47), which occurs in about 1 out of every 5,000 persons. He is ignorant of the meaning of many words and phrases, even some of the most simple and rudimentary. He is rather simple in his attitude. Rather than belligerent and resistive, he seems eager to please and willing to cooperate.

On the other hand, there is other evidence which is sufficient to support the trial court's conclusion that appellant understood the fundamentals that are supposed to be communicated by the recital of rights as required by *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. By his own testimony in open court, minor disclosed that he knew what an attorney was, that he could get one, that he did not have to speak to police unless he wanted to, and that they could not force him to talk. Two experts, one a clinical psychologist and the other a medical doctor specializing in psychiatry examined the minor. They were called by the minor to testify on his behalf. Neither expert testified that he could not understand the *Miranda* warning or its general meaning. There was testimony from the psychiatrist that the minor could deliberate, did understand the nature of the proceedings,

did understand most of the questioning, and knew what an attorney was. This particular testimony was without conflict. This evidence was for the trial court to consider and evaluate in making its determination of the facts. The "totality of circumstances" (*People* v. *Lara, supra,* 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Terry,* 2 Cal.3d 362 [85 Cal.Rptr. 409, 466 P.2d 961]) established by the evidence indicates that the trial court's ruling that appellant understood his rights was not erroneous.

One of the evils sought to be eliminated by the *Miranda* rule is obtaining of information from a defendant who truly does not want to talk, but whose silence or resistance to speak is overcome by coercion or persuasion. Here although defendant's intelligence is very low, there is no showing whatever that he truly did not want to talk, or that his desire was in any way overcome by reason of the police or anyone else taking unfair or unlawful advantage of his ignorance, mental condition, or vulnerability to persuasion.

The basic question before the trial court was: "Did the minor understand and intelligently and voluntarily waive his right to remain silent?" That question is not before us. The question before us is only "Was there sufficient substantial evidence to support the determination of that question by the trial court?" As we have indicated above, there was substantial evidence to support the trial court's determination. Before this court as a reviewing court may reverse such finding, there should be a clear demonstration that defendant did not know he could remain silent. There should further be a clear demonstration that had he known this, he would not have talked. Neither a low I.Q. nor any particular age of minority is a proper basis to assume lack of understanding, incompetency, or other inability to voluntarily waive the right to remain silent under some presumption that the *Miranda* explanation was not understood. The "knowing" element of the waiver of the *Miranda* rights can be so misconstrued and extended to such a degree that it would prevent the use of voluntary statements made to the police without any violation of their duty to advise a defendant.

2. *Refusal of the court to place appellant for a diagnostic report was not an abuse of discretion.*

■ Appellant contends the juvenile court abused its discretion by committing him to the California Youth Authority rather than continu-

ing the disposition hearing and placing him for a diagnostic report pursuant to Welfare and Institutions Code section 704.

Welfare and Institutions Code section 704 provides, in pertinent part: "[T]he court, if it concludes that a disposition of the case in the best interest of the minor requires such observation and diagnosis as can be made at a diagnostic and treatment center of the Youth Authority, may continue the hearing and order that such minor be placed temporarily in such a center for a period not to exceed 90 days . . . ."

The controlling factor then is whether the court believed such a study would be in the best interest of the minor. Here, at the time of the disposition hearing, the court had a good deal of information about appellant and did not feel any further study was necessary or in the best interest of the minor.

The court had the recommendation of Dr. Feldman that appellant would not benefit from placement in a state hospital but instead required a residential setting where he could gain vocational skills. It believed training was vital to appellant.

The court also knew appellant would require confinement facilities because he was violence-prone. Appellant had said "I can kill anybody I want to." He had attempted suicide. Prior to the crime appellant was aware of the potential for violence of his codefendant, having been previously solicited by him to commit a murder; yet appellant went with him to commit a burglary, assisted in the concealment of evidence of the murder, and stole a car.

Furthermore, while reference has consistently been made to appellant's low intelligence quotient, the court concluded he was operating on a more sophisticated "street level."

In short, the court concluded that: "[F]rom the psychiatric report, what the Court knows about this man and the facts surrounding the crime, and it would certainly indicate close term supervision. . . . This is not the type of child we will be able to return home in 60 days, and he, Norman, is 15 now. I just think Youth Authority is the only realistic solution in this case."

The court had facts at its disposal from which it validly concluded further study was not needed and that Youth Authority was in the best interest of appellant. No abuse of discretion occurred.

The judgment is affirmed.

Fleming, J., concurred.

**ROTH, P. J.**—I concur under compulsion of *People* v. *Lara,* 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202].

Appellant's petition for a hearing by the Supreme Court was denied February 11, 1977.