[Crim. No. 457.   In Bank.—February 28, 1899.]

THE PEOPLE, Respondent, v. ROBERT L. HILL, Appellant.

CRIMINAL LAW—HOMICIDE—EVIDENCE—HEARSAY.—Upon the trial of a defendant accused of murder, where the wife of the deceased testified that she had pointed out the place of the homicide to another person, on a day specified, the testimony of such other person that a particular place had been pointed out to him by her as the place where her husband lay upon the ground when killed, which place was located by the witness, according to her statement then made, is hearsay, and inadmissible.

ID.—CLUB NOT IDENTIFIED.—It is error to admit in evidence and to exhibit to the jury a club found in the vicinity where the homicide was committed, shortly after the killing, where there is no evidence to identify it as the one with which the defendant struck the deceased.

ID.—DEPRESSION IN WIRE FENCE—EXPERIMENT BY WITNESS—ERROR WITHOUT PREJUDICE.—A witness who has testified that eight days after the homicide he noticed a depression in a wire fence which the defendant had crossed at the time of the homicide, cannot properly testify to an experiment made by himself in putting his weight on another top wire between different posts producing a similar depression, it not appearing that the conditions of the experiment were the same as those which caused the other depression; but the admission of such evidence is not prejudicial error, it being immaterial in what manner the defendant crossed the fence for the purpose of determining the character of the affray.

APPEAL from a judgment of the Superior Court of Ventura County and from an order denying a new trial.   B. T. Williams, Judge.

The facts are stated in the opinion of the court.

Blackstock & Ewing, for Appellant.

W. F. Fitzgerald, Attorney General, and C. N. Post, Deputy Attorney General, for Respondent.

HARRISON, J.—The appellant was convicted of murder in the second degree in killing Theodore R. Parvin, and has appealed from the judgment thereon.   The circumstances attending the homicide are as follows: The appellant had leased to Parvin certain premises known as the "Hill Place," and had also

sold him certain personal property for use in the cultivation of the land, upon which he had taken a chattel mortgage as security for the payment therefor. Becoming dissatisfied with the manner in which Parvin was cultivating the land, he was anxious to buy him off, and for that purpose went to the place in company with his father on the 8th of February, 1898. Very soon after his arrival he approached the deceased, who was working within a corral upon a fence at the westerly side thereof, and while upon the outer side of the corral, and talking with the deceased respecting the purchase, hot words ensued between them, followed by a mutual assault which resulted in the defendant striking Parvin across the head with a stick, from the effects of which he died the same night.

The only person who witnessed the altercation was the father of the defendant, and at the trial he testified that he was at work about twenty or thirty feet away from where they were standing, while on opposite sides of the fence, and having his attention drawn to them by hearing Parvin speak in a loud tone of voice, saw him approach the defendant with uplifted hands, having a saw in one and a hammer in the other, and strike at him. Thereupon the defendant stooped down and picked up a stick from the ground and got over the fence into the corral. Parvin still had the saw and hammer uplifted in his hands, and, while striking at the defendant with the hammer, the defendant struck him across the head with the stick which he had picked up, which caused Parvin to fall to the ground, from which he almost immediately got up and walked over to the barn, against which he rested for a few minutes, and then went to another part of the corral and sat down. He also testified that the point in the corral at which Parvin was standing when the defendant struck him was about three feet east of the west fence of the corral and about twenty-five feet from the barn; that he fell toward the west with his head about a foot from the fence. Mrs. Parvin, the wife of the deceased, was in the dwelling-house and saw the defendant and her husband while they were in conversation upon opposite sides of the fence, but did not see the defendant strike her husband. She testified that very soon after she had seen them thus talking she was attracted by the loud voice of her husband, and went out upon the porch and saw her husband

lying on the ground, and the defendant standing over him with
a club raised as if to strike him, when his father came up and
grabbed his arm.    She said that in seeing this she looked through
the cracks of a pigpen which stood between her and the corral,
and which was shown to be ninety-two feet from where she stood,
but she was unable to designate the point in the corral at which
she saw her husband lying on the ground, or to point the same
out upon the map or diagram which was before the jury; but
she stated that on the 16th of February she had pointed out the
place to Mr. Graham as near as she could locate it.    Thereupon
the prosecution called Mr. Graham as a witness, and asked him
whether, on the 16th of February, Mrs. Parvin had indicated to
him the point in the corral at which she had seen her husband
lying on the ground on the 8th of February, and, if so, to point
out same on the diagram.    Defendant objected to these questions
on the ground that the testimony sought thereby was hearsay
and incompetent, but the objection was overruled, and the wit-
ness testified that Mrs. Parvin did point out a place where she
said she saw her husband lying on the ground, and the place so
pointed out the witness located at a point one hundred and sixty-
five feet from the porch, and about twenty feet from the place
at which the other witness had testified that Parvin fell.    The
father had also testified that the defendant did not stand with a
club raised over the deceased, or attempt to strike Parvin after he
fell, nor did he grab defendant's arm or attempt to prevent him
from striking Parvin.

The testimony thus given by Graham was clearly hearsay, and
the court erred in admitting it.    It permitted the jury to de
termine the point at which the conflict took place by the state-
ment of a witness based upon information derived from another
not under oath, and the correctness of whose statement was not
subject to a cross-examination by the defendant.    The evidence
was material, both for the purpose of illustrating the theory of
the prosecution in conducting the trial, and for establishing the
charge against the defendant by its corroboration of other evi-
dence introduced against him; and that it was deemed material
by the prosecution is shown by its efforts to secure its admis-
sion notwithstanding the objections of the defendant.    Another
witness for the prosecution, McClure, testified that in the after-

noon of the 8th of February, about an hour after the occurrence, and after all the parties had left the corral, he went into the corral and searched for weapons, or what he could find therein, and found a two by four scantling about three feet long lying on the ground; and in answer to a question whether he observed any indications on the ground of a struggle he said that near where he found the stick he saw toe prints that looked as if his toes had pushed the dirt and straw back. This place, he testified, was about north of the middle of the barn, and about fifteen feet from it. The barn was shown to be forty-eight feet in length. The place in the corral at which the altercation took place became, therefore, important for the purpose of determining whether the defendant struck the deceased while defending himself from the assault against him, or whether he pursued the deceased after he got over the fence, and struck him while retreating.

The court also erred in permitting the club which McClure found in the corral to be received in evidence and exhibited to the jury. There was no evidence identifying the stick as the one with which the defendant struck the deceased, or in any way connecting the defendant with it. Both of the witnesses who testified to having seen the defendant and the deceased together in the corral stated that they were unable to recognize it as the stick which the defendant had used, and the only other testimony relating thereto was that of the physician, who stated that the blow upon the head of the deceased must have been made by some rather large and smooth instrument, and that it could have been produced by such a stick. But, as it is evident from the description of the physician that the blow could have been produced by any other large and smooth implement, it was necessary that there should be some evidence identifying this stick as the one with which the blow was given before it could be offered in evidence. Otherwise the jury could only conjecture that it had been used by the defendant. (See Taylor on Evidence, sec. 557.)

The witness Graham testified to some measurements made by him of the fence on the 16th of February, and that he noticed that the top wire on the north side of the third post, at which it was claimed the defendant got over the fence into the corral,

was bent downward about an inch and a half.   He then testified, over the objections of the defendant, that he put his weight on the wire next to another post for the purpose of observing its effect, and that it made the downward appearance just about as it did at the third post.   Under the principle stated in *People v. Woon Tuck Wo*, 120 Cal. 294, this evidence should have been excluded.   (See, also, Gillett on Indirect and Collateral Evidence, sec. 66.)   If it were intended thereby to show that the kink in the wire at the third post had been made by the defendant, it was not shown that the conditions of the experiment by Graham were the same.   The relative weight of the two persons, the tension of the wire at the different posts, and the force with which each stepped upon the fence, were elements to be considered before the experiment could illustrate the supposed act of the defendant.   It cannot be said, however, that the defendant was prejudiced by this testimony.   It was conceded that he did get over the fence before striking the deceased, and whether he leaped over without touching the wire, or stepped upon the wire in order to get over, was immaterial for the purpose of determining the character of the affray between them.

Objections are made to certain instructions to the jury, but, as these objections relate to the form rather than to the substance of the instructions, and may be obviated upon another trial, it is unnecessary to discuss their correctness.

The motion to set aside the information was properly refused. (*People v. Tarbox*, 115 Cal. 57.)

The judgment and order appealed from are reversed and the cause remanded for a new trial.

Garoutte, J., McFarland, J., Temple, J., and Henshaw, J., concurred.