STATE OF IOWA V. CHESTER TYLER, Appellant.

Murder: EVIDENCE: In a prosecution for murder in the first de-
1    gree, the evidence is examined and held sufficient to require a
     submission of the same to the jury.

Assistant Prosecutor: APPEARANCE BEFORE GRAND JURY. The
2    court has power to appoint an assistant prosecuting at-
     torney who may appear before the grand jury and examine
     witnesses, and a motion to set aside the indictment on this
     ground made after a plea has been entered will not be enter-
     tained.

Challenge of Juror. It is not error to overrule a challenge for
3    cause where defendant waived a peremptory challenge, by the
     exercise of which the juror might have been excused.

Evidence. Admission in evidence of a club found near the body
4    of the deceased was not prejudicial error, though not fully
     identified as the weapon used by defendant.

Variance. Where the indictment charges defendant with "felon-
5    iously" etc., "lying in wait and with a specific intent to kill
     and murder," there is no variance where the proof tended to
     show intent to rob, or that defendant was "standing" rather
     than "lying" at the time of the commission of the crime.

New Trial. An affidavit of one of defendant's attorneys based on
6    the statements of a juror is hearsay, and insufficient to sup-
     port a motion for a new trial on the ground of misconduct of
     the juror.

*Appeal from Jasper District Court.*—HON. W. G. CLEM-
ENTS, Judge.

WEDNESDAY, JANUARY 13, 1904.

THE defendant was convicted of murder in the first
degree, and appeals.—*Affirmed.*

*Woodson & Brown* and *C. O. McLain* for appellant.

*Chas. W. Mullan*, Attorney General, and *Chas. A.
Van Vleck*, Assistant Attorney General, for the State.

LADD, J.—Somebody assaulted Dr. B. M. Failor on one of the streets of Newton at about eleven o'clock p. m., September 11, 1901. He was found soon afterwards, in a help-

I. EVIDENCE. less condition, near the lumber yard of Jasper & Son, about one hundred and fifty yards south of the Chicago, Rock Island & Pacific Railroad Depot, and died at five o'clock the following morning. When found he was in a semiconscious condition, with several marks of violence on his head, his right eye swollen, discolored, and slightly bleeding, and also bleeding at the nose and mouth. There was also a bruise over the right temple extending back some four or five inches, and over an inch in width, within which was a wound or laceration about two inches above the ear. The physicians agreed that the blow causing this bruise might have been given by a club introduced in evidence. This club was seen near deceased before his removal to a house near by, and was picked up, with a dollar, a dime, and a nickel, near where he lay, about a half hour afterwards. His watch had been taken, but a portion of the chain was still attached to his vest. His trouser pockets were turned wrong side out. He had left a patient's house, where he had looked at his watch to ascertain the time, a few minutes before, and was last seen going in the direction of the place where found. The evidence tended to show that a fair was in progress at Newton; that defendant was seen loitering about the depot in the afternoon of September 11th; that he was seen at Jasper & Son's lumber yard at five minutes after nine o'clock on the evening in question, and closely watching the witness when passing. Another witness saw the accused between half past ten and eleven o'clock about thirty or forty feet north of the northeast corner of the lumber shed, with a club three and one-half or four feet long and as thick as the arm in his hand. As the witness passed, defendant stepped out on the sidewalk

behind him.. He was also seen in Newton the following
day at about two o'clock in the afternoon. Some time
afterwards, in a conversation with two miners in Des
Moines, he stated that he was at the fair, and then added
that a man had been murdered at Newton for his watch
and money, and he wanted to get away from there, and
did not want to be strung up for nothing. About the mid-
dle of September he showed Mattie Frazier, at the Klon-
dike coal mines, near Des Moines, a gold watch, with Dr.
Failor's name on the inside, fully identified as that of de-
ceased, and asked her to keep it for him, advising her that
he had won it at a game of craps at Colfax. She declined,
and left it with a Mrs. Walker, who deposited it with her
son-in-law for safe-keeping. At the instance of Mrs.
Walker this man surrendered it to the officers some time
in October. We have set out the evidence which is un-
disputed, and without other explanation, as the best re-
sponse to appellant's contention that it does not sustain
the verdict. It was sufficient to carry the case to the jury.

II. After the cause had been submitted to the grand
jury, E. J. Salmon was appointed by the court, upon the
recommendation of the county attorney, to assist in the
2. ASSISTANT prosecution, and "fully authorized to appear
prosecutor:
appearance before the grand jury and in the court as
before grand
jury. such assistant prosecutor." In pursuance of
this appointment "he was present before the grand jury
during the investigation of the case against defendant, and
took part in the proceedings by examining a number of wit-
nesses," but was there at no time or in any way that would
have been improper on the part of the county attorney.
The statute makes it a ground for setting aside the indict-
ment "when any person other than the grand jurors were
present before the grand jury during the investigation of
the charge, except as required or permitted by law" (sec-
tion 5319, Code); and the defendant moved to have this
done because of Salmon's appearance before the grand

jury.   Section 303 of the Code authorizes the county at-
torney, with the approval of the court, to appoint an as-
sistant to aid him in the trial.   Prior to the return of the
indictment, however, there was no case for trial, nothing
to plead or answer to, no issue joined.   *State v. Addison*,
2 S. C. 356.   This section does not seem broad enough to
authorize the selection of an assistant before the grand
jury.   But prior to the enactment of any statute on the
subject this court declared that the district court possessed
the inherent power to appoint counsel, in absence of the
prosecuting attorney, to appear before that body and rep-
resent the state at trials in his place and stead; saying:
"It is a part of its [the court's] inherent power, necessary
for its own protection and existence, essential to the ad-
ministration of justice and the enforcement of the law,
finding its support in the same reasoning which authorizes
a court to punish for contempt, to appoint ministerial or
police officers to carry out its mandates, and other similar
acts."   The same view was expressed in *Dukes v. State*,
11 Ind. 557 (71 Am. Dec. 370), and *Mitchell v. State*, 22
Ga. 211 (68 Am. Dec. 493).   With the prosecutor present,
the right to assistance has been vindicated by a long line
of decisions.   *State v. Montgomery*, 65 Iowa, 483; *State v.
Fitzgerald*, 49 Iowa, 260; *State v. Ormiston*, 66 Iowa, 143;
*State v. Shreves*, 81 Iowa, 615; *State v. Crafton*, 89 Iowa,
109.   In *State v. Shinner*, 76 Iowa, 147, the rule is broadly
stated that "in a proper case the court may permit an
attorney to assist in the prosecution of an indictment with-
out regard to the offense charged, even though he be not
employed by the supervisors, and is not deputy of the
county attorney."   The people do not, by the election of
a prosecuting attorney, surrender the right to employ
other adequate means for the prosecution of criminals, nor
avow that other counsel will not be employed whenever
the occasion demands such a course.   To deny such right
might often lead to the defeat of public justice.   In the

forensic contest the defendant is at liberty to engage such assistance as he may choose, and the state should be in a situation to cope with the forces opposed with something like equality in professional ability and experience. The grounds for these conclusions will be found somewhat elaborated in *Tull v. State*, 99 Ind. 238; *State v. Wilson*, 24 Kan. 189 (36 Am. Rep. 257); *People v. Blackwell*, 27 Cal. 65; *Edwards v. State*, 47 Miss. 581.

The allowance of assistance before the grand jury, when required, may be vindicated on precisely the same grounds. That the necessity therefor will seldom arise does not prove the want of authority, but that it should be cautiously exercised. The object to be obtained in any event is the more effective administration of justice. Attorneys are officers of the court, and the oath taken by them when admitted to practice is quite as full and complete as that of the county attorney. True, they execute no bond, but when acting as special counsel for the state their conduct is subject to review, and, should it be unbecoming as an officer of the court, a penalty may be imposed quite as severe as that nominated in the bond. *Raymond v. People*, 2 Colo. App. 329 (30 Pac. Rep. 504). The presence of such an officer before the grand jury under the direction of the court differs radically from that of a stranger, who is under no such restraint. The main reasons for preserving the secrecy of the jury room are to avoid information reaching the accused so as to enable him to escape before arrest, and to insure absolute freedom of discussion and deliberation to the jurors. These objects will not be jeopardized by the appearance of a reputable attorney in the grand jury room, and only such, it may be assumed, will have the approval of the court. In the instant case the county attorney was absent much of the time, owing to the sickness and death of his father, but he seems to have supervised the investigation and

signed the indictment. Salmon examined some of the witnesses and did only what the county attorney might properly have done. Even if there be doubt as to the necessity of his appointment prior to the return of the indictment, it was entirely without prejudice to the defendant. In *Bennett v. State*, 62 Ark. 516, 534 (36 S. W. Rep. 947), an attorney was before the grand jury by consent of the prosecuting attorney, and examined some of the witnesses. This was held proper, as he was acting in that officer's place and stead. In *Blevins v. State*, 68 Ala. 92, an attorney went before the grand jury under similar circumstances, and the defendant was held not to have been prejudiced, as no opinion had been expressed by the attorney; the court apparently entertaining the view that only the public prosecutor might properly appear before the grand jury. In *State v. Addison*, 2 S. C. 356, the attorney expressed an erroneous opinion of the law, and this was held to be such prejudice as to require the indictment to be set aside. See *State v. Kimball*, 29 Iowa, 267; *State v. Wood*, 112 Iowa, 484. There was no error in overruling the motion to set aside the indictment. The defendant attempted to renew the motion after the state had introduced its evidence and rested. It is enough to say that such a motion cannot be entertained after the plea has been entered by defendant. Section 5319, Code.

III. Complaint is made of the overruling the challenge to a juror for cause. As the defendant waived his tenth peremptory challenge, the ruling, if erroneous, does not appear to have been prejudicial. *State v. Yetser*, 97 Iowa, 423; *Owen v. Kamer*, 16 Ky. 705 (29 S. W. Rep. 437); *Territory v. Hart*, 7 Mont. 42 (14 Pac. Rep. 768) 12 Ency. P. & P. 505. But it was correct, as will appear from an examination of the authorities gathered in the first cited case, and was not within the rule announced in *State v. Crofford*, 121 Iowa, 395.

3. CHALLENGE of juror.

IV.   Error is predicated upon the introduction in evidence of the club heretofore referred to.   It was not identified as that with which the blow was struck, nor as that seen in the hands of defendant.   There was no evidence of any blood stains upon it, and, while the physicians thought the bruise might have been caused by it, this was true of any number of like clubs.   As to whether it was the weapon used was a mere matter of conjecture.   Receiving it in evidence may have been erroneous (*People v. Hill*, 123 Cal. 571 [56 Pac. Rep. 443]), but could not have been prejudicial.   As said, it was found near the body, and may have tended in some degree to explain the situation of deceased when found.   See *State v. Gray*, 116 Iowa, 231.

4.   EVIDENCE.

V.   At the close of the state's evidence the defendant moved for an acquittal because of a supposed variance between the indictment and the proof.   The indictment charged that defendant "feloniously, willfully, deliberately, premeditatively, and of his malice aforethought, and by lying wait, and with specific intent to kill and murder, did strike," etc., and it is claimed, first, that the proof tended to show that the guilty person was not lying, but standing erect, and second, that the intent of the assailant was to rob, and not murder.   The last point is disposed of by *State v. Johnson*, 72 Iowa, 393.   "Lying in wait" means hiding in ambush or concealment.   *State v. Cross*, 68 Iowa, 180.   It does not necessarily refer to the attitude of the body, but rather to its location, and the purpose of taking the person attacked unawares.   It is the mental poise of the wild beast in quest of prey, and necessarily implies malice, premeditation, deliberation, and the willful intent.   If the accused, armed with a club, was hiding in the darkness with the purpose of assaulting Failor when unaware of danger, he was, though standing, technically "lying in wait."

5.   VARIANCE.

VI.    One ground for motion of new trial was miscon-
duct of one of the jurors.    It was supported by an affidavit
of one of the defendant's attorneys, based entirely upon
the alleged statements of the juror.    This
6.  NEW trial.    was clearly hearsay, and did not establish
the charge.    *State v. Quinton*, 59 Iowa, 362.    The two in-
structions on reasonable doubt, when read together, obvi-
ated the criticism in *State v. Collins*, 20 Iowa, 85, and
fairly embodied the suggestions contained in that opinion.
But see *Spies v. People*, 122 Ill. 1 (12 N. E. Rep. 865, 986,
17 N. E. Rep. 898, 3 Am. St. Rep. 320), and *Nevling v.
Com.*, 98 Pa. 322, where the use of the expression criti-
cised has been approved.

We discover no reversible error in the record, and the
judgment is AFFIRMED.