[Crim. No. 1452.   Third Appellate District.—December 5, 1935.]

## THE PEOPLE, Respondent, v. OTIS KELTON McCALL, Appellant.

Leonard B. Fowler for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

DEIRUP, J., *pro tem.*—Appellant was charged with manslaughter and convicted.   The record shows that the appellant and the deceased, Hubbard, had been acquainted with each other for four years prior to May 25, 1935, and that during a part of the time they had worked together on the highway.

Their relations with each other had always been friendly. On the day in question Hubbard visited McCall at his home near Madera, bringing with him a pint of whiskey. They sat in Hubbard's automobile for an hour and a half, drinking and talking, then went into McCall's house and drank the rest of the whiskey and some beer. After that they started for town in Hubbard's car, Hubbard driving in a zigzag and very dangerous manner.

The only witness who testified as to what occurred thereafter, up to the time the deceased received the injuries from which he died, is the appellant. He said that he protested with Hubbard about the way he was driving, and repeatedly asked permission to drive himself. He finally induced him to turn around to go home. Hubbard continued to drive drunkenly, then stopped the car at the side of the road, killing the engine. The self-starter being out of commission, Hubbard cranked the car, and McCall, expecting to drive, moved into the driver's seat. After the engine had been started, Hubbard came back and threw the crank into the rear portion of the automobile and insisted on getting into the driver's seat. McCall refused to allow him to do so; whereupon Hubbard began to beat him on the head and shoulders with his fist. McCall got out of the car and hit Hubbard two or three times on the face, knocking him to the pavement. He tried to arouse him from a stupor which, he said, he thought was due to intoxication, but found that he could not make him talk or sit up. He then walked to his own home, not far away, to get his automobile for the purpose of taking Hubbard to some place where he could receive medical assistance.

The record shows that McCall took Hubbard to the latter's home, and, with the assistance of Mrs. Hubbard, tried to get him out of the car. A stranger, striking a match, noted that Hubbard's face was bloody and suggested that he be taken to the county hospital, and he and McCall did so. The next morning McCall went to Hubbard's home to tell him that his car had been removed to McCall's place, found that he was not there, then went to the hospital and learned that he had died. McCall had stated the evening before, and said again that morning, that he had found Hubbard on the highway, injured, but in the afternoon he gave a complete statement to the officers, detailing the events as he testified to them at the trial.

He said that he had told the first story because he did not want it known that he and his friend had had a fight.

At the hospital Hubbard was found to be bruised and bloody, with a slight abrasion above his right ear. An autopsy disclosed a crack in the skull, four inches long from a point about an inch above and an inch back of the ear, with several lines extending downward. The skull was unusually thin. Medical experts testified that it would have been almost impossible for the injury to have been caused by a blow with a fist, but that it could have been due to a blow with a blunt instrument, or to the head striking an elevated point on the pavement. Two of them thought that it would not have been possible for it to be the result of the head coming in contact with a smooth surface; two others considered that possible, but unlikely. The pavement was smooth, like that of any other fairly good oiled road.

The court admitted in evidence, over the objection of the appellant, an automobile crank which was found in the car between the front and rear seats, a wrench from the pocket of the rear seat, a wooden hammer handle that lay on top of the seat springs (there being no cover over them), and a tire iron or jack handle which was under the springs. The experts agreed that the injury to the skull could have been caused by a blow with any of the implements, excepting, perhaps, the wooden handle.

There was no evidence which connected the appellant with any of the implements. The car was not his. He did know that the crank was there, for he saw the deceased throw it into the automobile, but there is no evidence to indicate that he had even seen the other implements. There were no fingerprints or bloodstains on any of them. In fact, it is hardly conceivable that the appellant could have used the tire iron that was under the seat.

Counsel for appellant contends that it was reversible error on the part of the trial court to admit into evidence the said implements without showing first that they were in the immediate possession of the appellant, or connected with the assault in some way.

Where the evidence on the part of the prosecution is circumstantial, an implement by means of which it is likely that a crime was committed, is admissible in evidence, if it has been connected with the defendant. In *People* v. *Peete*, 54 Cal.

App. 333 [202 Pac. 51], it was held proper to receive in evidence a revolver, since "it was shown that the wound in the neck (of the deceased) might be produced by a bullet from just such a revolver as that which, with one cartridge discharged, was found secreted in the closet of a room that defendant had occupied at the time when the murder presumably was committed". In *People* v. *Gilman,* 43 Cal. App. 451 [185 Pac. 310] (an abortion case), it was held not to be error to receive in evidence certain surgical instruments owned by the defendant at the time of the alleged offense, there being circumstantial evidence that she had used them. In *People* v. *Coker,* 78 Cal. App. 151 [248 Pac. 542], the defendant had stated that he had "run an ice pick into" the deceased, and that it would be found in his car; and an ice pick, taken from the car, was received in evidence. Also, pieces of a buggy shaft with indications of blood on them (*People* v. *Wilson,* 23 Cal. App. 513 [138 Pac. 971]), and a rock with fresh blood on it, found at the place where the beating occurred (*People* v. *Sampo,* 17 Cal. App. 135, 149 [118 Pac. 957]), were held admissible, a proper foundation having been laid. But in cases where the implement by means of which the crime might have been committed, is not shown to have been in the possession of the defendant, or to have been connected with the crime in any way, the exhibiting it to the jury has uniformly been held to be prejudicial error.

In *People* v. *Hill,* 123 Cal. 571 [56 Pac. 443], there was testimony of eye-witnesses that the defendant had struck the deceased with a stick, following an altercation in a corral. About an hour after the occurrence a witness found a two-by-four scantling in the corral, close to what he thought were toe-prints. Mr. Justice Harrison said: "The court also erred in permitting the club which McClure found in the corral, to be received in evidence and exhibited to the jury. There was no evidence identifying the stick as the one with which the defendant struck the deceased, or in any way connecting the defendant with it. Both of the witnesses who testified to having seen the defendant and the deceased together in the corral stated that they were unable to recognize it as the stick which the defendant had used, and the only other testimony relating thereto was that of the physician, who stated that the blow upon the head of the deceased must have been made by some rather large and smooth instrument,

and that it could have been produced by such a stick. But, as it is evident from the description of the physician that the blow could have been produced by any other large and smooth implement, it was necessary that there should be some evidence identifying this stick as the one with which the blow was given, before it could be offered in evidence. Otherwise, the jury could only conjecture that it had been used by the defendant. (See Taylor on Evidence, sec. 557.)''

In *People* v. *Smith*, 55 Cal. App. 324 [203 Pac. 816], where there was evidence of murder by means of cyanide, it was held to be prejudicial error to introduce in evidence a can of cyanide which had been in the filing room of the company for which the defendant was working as a truck-driver, in the absence of proof that the defendant even knew that it was there. It is said in the opinion: ''Without doubt, it is the general rule that evidence that the accused had in his possession the means to commit the crime, or had an opportunity to do so, is ordinarily admissible when the evidence against him is entirely circumstantial. In applying this rule, however, caution should be exercised to avoid giving undue significance to circumstances that are but the ordinary incidents of every-day life. The fact that the very existence of a prosecution tends to throw suspicion upon every act of the accused and to cause trifles 'light as air' to assume the appearance of 'confirmations strong as proofs of Holy Writ', should give pause to any heedless imprudence in the admission in evidence of circumstances that are barren of incriminating significance. As is well said by the learned author of Wharton's Criminal Evidence (vol. 2, sec. 915), 'circumstances, trivial in themselves, take on an exaggerated character the moment that suspicion is directed toward a person accused of crime; and because of this tendency, no circumstances should be admitted that cannot be shown to have a direct and obvious relevancy to the crime charged'. That the introduction of the can of cyanide as an exhibit for the prosecution was highly prejudicial cannot be gainsaid for a moment; but that it in any appreciable degree tended to show that the defendant used any of its poisonous contents to do away with his wife must be denied.''

The introduction in evidence of articles not traced to the defendant was held to be prejudicial error in *People* v. *Muhly*, 11 Cal. App. 129 [104 Pac. 466], and in *People* v. *Mullen*, 69 Cal. App. 548 [231 Pac. 588].

We think that it was highly prejudicial to the appellant to exhibit to the jury all of the implements that were found in the car of the deceased, upon the sole ground that if any one of them had been used, it might have caused the injury which resulted in death. If such evidence were permitted, then in any case where the only witness is the defendant, all of the things which he might have used in the perpetration of the alleged crime could be brought into court and shown to the jury.

For the reasons stated in the decisions from which we have quoted, we must hold that the admission in evidence of the implements taken from the automobile was prejudicial error.

The trial court gave to the jury the usual instructions relating to manslaughter. Later, at the request of the foreman of the jury, the trial judge illustrated legal principles applicable to the case by reference to evidence that had been introduced. Appellant maintains that error was committed, under the rules stated in *People* v. *Talkington*, 8 Cal. App. (2d) 75 [47 Pac. (2d) 368]. We have read carefully the statement made by the court. Parts of it, referred to by counsel, would be objectionable if standing alone, but altogether the comments of the judge were within the privilege given by the amendment to section 19 of article VI of the Constitution of this state. They were not argumentative, and were temperately and fairly made, and emphasized the power and duty of the jury to decide the case for themselves, irrespective of the opinion of the court.

Appellant objects also to the refusal of the court to give two instructions requested by him; but the instructions given, amplified by the comments of the court, covered the subject fully.

The judgment is reversed and a new trial granted.

Thompson, J., and Pullen, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 2, 1936. Waste, C. J., Seawell, J., and Shenk, J., voted for a hearing.