[Crim. No. 2024.   Third Dist.   Sept. 28, 1948.]

THE PEOPLE, Respondent, v. JOHN BUNDTE et al., Appellants.

Clarence E. Todd, George E. Flood, Henry C. Todd and Gordon W. Mallatratt for Appellants.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendants were jointly indicted in three counts under section 404 of the Penal Code for participating in riots, and in nine counts under section 245 of that code for assaults committed upon different named persons by means likely to produce great bodily injuries, to wit, by the hurling of rocks. They were tried by jury and convicted of all counts, except that William Phillips was acquitted of the assault charged in the fourth count. The riots charged in the first two counts occurred on January 30, 1947, and the riot charged in count three, together with the assaults charged in the nine remaining counts occurred February 4, 1947. All offenses grew out of a labor dispute. The defendants, together with 30 or more union labor men, were engaged in picketing two adjacent lumber mills near Willits in Mendocino County. The assaults were made on nonunion employees of the mills and upon one driver of a truck who was hauling lumber from another mill to Oakland. The assaults were made by the defendants and their associate pickets, acting together, upon the

nonunion workmen, by hurling rocks at them. Several of the workmen were seriously injured.

A demurrer to the indictment was overruled. Motions for a directed verdict and for a new trial were denied. The trial commenced on April 14, 1947. Separate verdicts were returned against each defendant. Judgment was rendered accordingly. The defendants were sentenced upon each conviction of riot to the county jail for the term of 180 days, such sentences to run concurrently. They were also sentenced upon each assault of which they were convicted to state prison for the term prescribed by law, said sentences to begin at the expiration of the county jail sentences, and to also run concurrently. From said judgment the defendants have appealed.

The appellants contend that the counts for riots under section 404 of the Penal Code, which are misdemeanors (Pen. Code, § 405), were improperly joined in the indictment with the remaining counts of assaults to commit bodily injuries under section 245 of that code, which are felonies. They therefore assert that the court erred in overruling their demurrer, and their motions for a directed verdict and for new trial, on that ground, and because of a lack of evidence showing that the defendants *acted together* in committing the riots to disturb the public peace *by means of force or violence*; that the evidence fails to show that the defendants personally threw the rocks that injured some of the workmen or damaged their automobiles; that the evidence fails to show they cooperated with the other strikers in commission of the offenses; that they should not have been found guilty of certain assaults in which they were not identified as personally hurling rocks, on the mere theory that they aided and abetted their associate strikers in committing the offenses; that section 31 of the Penal Code has no application to the circumstances of this case; that the court erred in instructing the jury in that regard, and that the court erred in admitting in evidence photographs of the rocks thrown and the automobiles damaged in said assaults.

The transcript contains 1,000 pages of evidence. There is much conflict of testimony on the essential issues. The strike of union labor employees commenced about a month prior to the commission of the offenses in question, at two adjacent lumber mills near Willits in Mendocino County. It continued to the time of the commission of the offenses. The riots charged

in counts one and two occurred January 30, 1947, at the Hollow Tree Lumber Company mill located 9 miles east of Rockport on the highway from Willits to Fort Bragg. The riot charged in count three and the assaults charged in the remaining counts occurred February 4, 1947, at Richardson Lumber Company mill situated on said highway two miles west of Willits. At the time of the affrays both mills were being operated by nonunion workmen. Both mills were then picketed by a small number of men estimated at not more than 10 men. At the time of the disturbances in question the number of pickets had been increased to 30 or 35 men. Most of the same pickets were engaged in all the affrays. The defendants were among those assailing pickets, and active in all offenses charged at both mills. When the foreman and nonunion employees left the Hollow Tree Lumber Company mill at noon to go to lunch at the cook-house, some distance down the roadway, they were compelled to pass through the picket line, consisting of 30 to 35 men who had congregated at the entrance to the mill. The defendants were then among those pickets. An open lane was forced by a deputy sheriff through the crowd of pickets, along which the nonunion workmen passed. The defendant Bundte held in his hand a switch which he was flipping back and forth to intimidate the passing workmen. The officer warned him not to strike anyone with it. No one was struck. The attitude of the pickets was clearly antagonistic. But the workmen passed the picket line without an assault. When they reached a point about 100 yards down the roadway, George Sherrard, one of the strikers who had evidently been hiding there, suddenly stepped from behind a clump of bushes and hastened toward them. He was muttering and using "some pretty bad language." He bumped against Mr. Smith, who was in the lead, and deliberately "reached out and struck" in the face, or slapped Charles Scaife, the mill foreman. Sherrard and Scaife then clinched and a scuffle ensued. They fell to the ground. Scaife's brother James tried to separate them. Sherrard "jumped on top of Scaife." Observing the affray, a large group of the strikers ran down there. "Some of them had rocks and things in their hands." The defendants, Bundte and Phillips, were among them. The deputy sheriff also ran to the scene of the affray. "They all more or less arrived at the same time." "There were several remarks passed by them [the strikers] about getting the S.O.B. and words to that effect." William

Smith testified, "The pickets came charging down the road, and there were sticks and stones in some of their hands. And they said 'Let's take the bastards' or words to that effect. . . . Mr. Bartolomei and John Bundte were one of the first there." The deputy sheriff testified that he heard the defendant Phillips say "I hope George [Sherrard] gets the bastard," and that Bundte said to Sherrard "Poke the —— ——, George." He said he saw Sherrard when "Scaife had [received] this more or less of a haymaker"; that "Bundte reached down awful low . . . and he says . . . 'Reno, you seen who started this,' " to which the officer replied "Yes, I seen who started this." The sheriff stopped the fight and told Bundte "You tell your men that there will be no more of this," to which Bundte responded by saying, "Men, there will be no more of this—*just as much.*" The inference is that Bundte thereby purposely encouraged "his men," the strikers, to continue the use of force and violence "just as much" as they desired. The strikers then returned to the mill, while the nonunion workmen proceeded to the cook-house.

About 2 o'clock on the afternoon of January 30th, Ed Sands, who had been driving a truck for an Oakland firm for about eight years, reached the Hollow Tree Lumber Company mill with a heavy load of lumber chained to his truck and trailer, which he was hauling from Rockport to Oakland. He said he had been carrying a revolver, by permission, "ever since they tampered with the brakes in one of the other trucks." He was then driving along the highway past the entrance to the Hollow Tree Lumber Company mill at the rate of about 25 miles per hour. Robert Schenk, the treasurer of the last mentioned company, heard Sands' truck approaching. He said, "Apparently the pickets heard it too, because there were a number of shouts or statements that I heard that 'Here comes the truck.' . . . The ones around the fire, and the others started to climb out of their cars. And there was lots of scurrying around and picking up of rocks, . . . ." The strikers formed on either side of the highway in two groups. They were armed with rocks. Schenk said that he saw 30 of them on his side of the road, and that "I didn't see anyone on my side that didn't throw rocks." Sands testified that he saw 40 or 45 pickets waiting for him at that place. He saw them reach down and pick up rocks. He anticipated trouble, and he reduced the speed of his machine, threw a shell into his automatic revolver and laid it on the cushion by his side. When

he reached a point about 15 feet from the strikers, he said "they all started throwing rocks." A large stone crashed through the window of his cab and struck him with great force in the face. It broke his nose, cut his cheek, blackened his eye and stunned him. He was dazed, partially blinded and angry. He claimed that he identified the defendant Bundte as the man who threw that stone. He suddenly applied the brakes with such force that the cables which bound the lumber to the truck were loosened and the load slid forward, damaging his cab and jamming the doors. He seized the revolver and fired two shots toward Bundte without injuring anyone. He crawled through a window of his cab, with his revolver in hand, and proceeded to round up the assailants. Great commotion and wrangling ensued. The deputy sheriff soon arrived and quelled the disturbance. Sands stated that both Bundte and Phillips were among the pickets who attacked him, and charged Bundte with throwing the rock which struck him in the face, but Bundte called him a liar. Upon request, Sands promptly delivered his revolver to the officer, admitting that he fired the two shots after he had been struck. Two large rocks were found in his cab. They were identified and received in evidence. The rocks varied from the size of an egg to that of a cocoanut. That was the last assault on that day. All the pickets who were present participated in the assault upon Sands with rocks. Bundte and Sherrard appeared to be leaders in the affrays. Clearly, the strikers were the aggressors in both affrays, and the assaults appeared to have been deliberately planned with a common purpose to intimidate the nonunion workmen and to win their strike. Those episodes may not be defended on the theory of the right of peaceable picketing. They were unprovoked assaults by unlawfully hurling deadly rocks with the intent to inflict great bodily injuries and to damage machines. The picketing force had been greatly increased the morning of the first affray. When one of the defendants was afterward inferentially charged with throwing one of the rocks, he said they ought to have done it long before that time.

The third count charged defendants with the commission of a riot on February 4th, at Richardson Lumber Company mill. Each of the remaining nine counts charged them with assaults upon different named persons, at the same time and place, committed by the hurling of rocks. As the nonunion men drove in their separate machines to the mill to go to

work that morning about 8 o'clock, they were met at the entrance by 25 or 30 pickets who were armed with rocks and were lined up on either side of the road. The defendants, Bundte and Phillips, were among them, and they actively participated in the assaults which followed. Some of the strikers were heard to exclaim "there goes another one of them s-of-b . . . scabs," and expressions of like import. Rocks were thrown by the strikers at all passing cars. Windshields and windows were shattered and the cars were otherwise damaged. Half a dozen of the workmen were seriously injured and sent to the hospital for treatment on that account. Pat Gibson, a truck driver for that company, operated the third car that arrived that morning. He testified that at least 12 rocks were thrown at him as he drove into the premises, most of which struck his machine. One rock broke his windshield and struck him in the head, seriously injuring him. He identified Bundte, Phillips, Sherrard, Moore, McCoard and Pimentel, among the other pickets who threw stones at him. After running the gauntlet, he parked his car and, in company with another workman, watched, from behind a pile of lumber, the stoning of other machines of nonunion workmen as they arrived that day. Stanley Richardson, one of the mill owners, testified that he arrived just behind the car of Sherman Schwartz and saw both Bundte and Phillips throw rocks at him. Richardson also identified Bundte as one of the men who threw rocks at him as he entered the premises. He also watched other workmen as they arrived, and said that each of them was stoned. There were only 14 mill employees at that time and they were greatly outnumbered by the strikers. Richardson told them to remain out of sight, while he went to summon an officer. He left from the rear of the building, and, keeping out of sight, he walked a quarter of a mile to the home of Mr. Sorensen where he telephoned to Willits for a taxicab and an officer. In about one hour the deputy sheriff arrived, and the disturbance was quelled.

The first contention of appellants is that the court erred in overruling their demurrer to the indictment, on the chief ground that three counts of riots under section 404 of the Penal Code, which are misdemeanors, were illegally joined with nine counts of assaults to commit bodily injuries under section 245 of that code, which are felonies. It is asserted those offenses were improperly joined in the indictment under section 954 of the Penal Code, because it was not alleged that

they grew out of the same transaction, or that they belong to the "same *class* of crimes or offenses."

There is ample evidence to show that each of the offenses charged in the indictment grew out of the same series of connected transactions and that they were inspired by a common purpose on the part of the defendants and their associate strikers to perpetrate the riots and commit the assaults with rocks, of which the defendants were charged. We also think there is adequate proof that the riots and the assaults charged are offenses of the same class or character. They were all perpetrated by the same group of pickets, acting together to win a labor strike by means of force, violence and intimidation, consisting of stoning the nonunion workmen with rocks.

We are therefore of the opinion the several offenses were legally united in the indictment, and that the demurrer was properly overruled.

It is true that the first two counts which charged defendants with participating in riots were committed five days before the riot occurred which is charged in count three, and that the assaults to commit great bodily injuries also occurred on February 4th. It is also true that the last mentioned riot and all of the assaults were committed at a mill owned by a company other than the one which owned the mill where the first two riots occurred. But the same labor troubles existed at both mills which are located in the same vicinity. Strikes existed in both mills. Picket lines had been maintained for the same period of time at both mills. The same group of pickets operated similarly and together at both mills in all the offenses charged. They were all actively engaged together for the same common purpose. All offenses were committed in the same manner by the same means of hurling rocks. We therefore conclude that all offenses charged grew out of the same series of connected transactions, and that they belong to the same class or character of offenses, and were therefore properly united in the indictment.

The general character of the offenses was the same. The riots were alleged in the language of the statute to have occured, contrary to section 404 of the Penal Code, by the defendants unlawfully "acting together" to disturb the *public peace* by the use of "force and violence." That force and violence was the throwing of large stones. It was not necessary that a previous agreement between the aggressors should have been alleged, or have existed, to bring such offenses within the inhibitions of section 404. The strikers might have

met lawfully for the purpose of ''peaceable picketing,'' but if the defendants and their associates afterward cooperated and acted together for the unlawful purpose of using force and violence to disturb the public peace, they would nevertheless be guilty of a riot under that section. (*State* v. *Stalcup*, 23 N.C. 30 [35 Am.Dec. 732] ; 8 R.C.L. p. 361, § 331.) Section 404 defines a riot as :

''Any use of force or violence, disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot.''

It is the concurrence of the defendants, unlawfully acting together and with their striking associates, in the use, or threat to unlawfully use force or violence, that constituted the offenses of riots. That section does not depend upon a previous agreement of the parties to exercise force or violence. (54 C.J. § 6, p. 832, and cases cited.) Section 954, upon which appellants rely, authorizes the uniting in an indictment of ''two or more different offenses connected together in their commission,'' or of ''two or more *different offenses of the same class* of crimes or offenses.'' The statute makes no distinction between misdemeanors and felonies. A misdemeanor and a felony may belong to the same general class of offenses. In the absence of a statute to the contrary, in jurisdictions where, under an indictment for a felony, the defendant may be convicted of a misdemeanor, as he may in California, separate counts for the two offenses, regardless of whether they are misdemeanors or felonies, may be joined in one indictment provided they grow out of the same transaction or belong to the same general class of offenses which are corollary in nature. (42 C.J.S. § 180, p. 1140 ; 27 Am.Jur. § 132, p. 690.) In the text last cited it is said :

''Where . . . on an indictment for a felony a conviction for a misdemeanor is allowable, counts for felony and misdemeanor, growing out of the same transaction and of the same general nature and course of trial, may be joined.''

And at page 688, section 130, of the last-cited authority it is said in that regard :

''. . . It is the general rule, . . . , that two or more offenses committed by the same person may be joined in the same indictment or information, to meet the exigencies of the evidence, where they are of the same general nature or class of crimes, . . . and where all the offenses grow out of the same transaction *or series of transactions or connected transactions*, even

though the property forming the subject matter of the offense belonged to several different persons." (Italics added.)

It is likewise said in 42 Corpus Juris Secundum, at page 1140, section 180:

"Felonies and misdemeanors may, in some jurisdictions, be joined where charges relate to the same transaction, especially where the misdemeanor is in the nature of a corollary to the felony."

And the following paragraph adds that this may be done "although the offenses are of different grades and call for different punishments." (Citing numerous authorities.)

The superior court had jurisdiction of misdemeanors constituting riots since the penalty is punishable by a fine in excess of $1,000 and by imprisonment not exceeding six months. (Pen. Code, § 1425; *People* v. *Brenta*, 64 Cal.App. 91 [220 P. 447].) The penalty for riots is imprisonment not exceeding two years, or a fine not exceeding $2,000. (Pen. Code, § 405.)

It was not necessary that all of the charged offenses should have grown out of the same transaction, that they should have occurred on the same date, or that they were perpetrated against the same person or company. It was sufficient to render the joining of the counts of the indictment valid provided the offenses were *of the same class*, or as the Supreme Court recently said, "[I]f there is a common element of substantial importance in their commission." (*In re Pearson*, 30 Cal.2d 871 [186 P.2d 401].) In the case last cited the defendant was charged in one information with thirteen separate counts of different offenses, consisting of kidnapping, robbery and assaults with deadly weapons, committed on different dates and upon different persons. He was convicted of all felonies. On petition to the Supreme Court for a writ of habeas corpus, he contended that the judgment was void because there was a lack of authority to unite in one information under section 954 of the Penal Code such "unrelated felony counts." The writ was discharged. In response to petitioner's contention, the court held that the various offenses were properly united in different counts of the same information. It said:

". . . Even on appeal, it appears, they would not have been cause for reversal. Joinder of distinct offenses is proper '*if there is a common element of substantial importance in their commission.*' (*People* v. *Scott* (1944), 24 Cal.2d 774, 778 [151 P.2d 517].) The consolidation of a group of charges

similar to those against petitioner was upheld in *People* v. *Duane* (1942), 21 Cal.2d 71, 74-77 [130 P.2d 123], where the 'common element' was a plan to rob managers of Safeway Stores. In any event, the question of consolidation or severance is procedural and not, as petitioner contends, jurisdictional.'' (Italics added.)

Regarding the guilt of all who participate in, or who promote or encourage, a riot, it is said in 8 Ruling Case Law, page 331, section 361, supported by authorities, that:

''. . . All who encourage, incite, promote, or take part in a riot are guilty of riot as principals; and a person, to be guilty as a rioter, need not be actively engaged, but if present giving support, countenance, etc., it is sufficient; but mere presence alone is not sufficient to constitute one a rioter.''

■ Moreover, the demurrer to the indictment in this case was to the asserted invalidity of the instrument as a whole. It did not apply to any particular count. The misjoinder of offenses separately charged will not invalidate the indictment as a whole, if any single count therein is sufficient in form and substance to charge a public offense. (*Culjak* v. *United States*, 53 F.2d 554, 82 A.L.R. 480, at p. 482; 27 Am.Jur. § 129, p. 687.) ■ In this case the defendants were not prejudiced by the joining of the various counts. All of the evidence with respect to each count applied to both defendants. The evidence of the throwing of stones and of participation in the riots by other striking associates was competent, since there is adequate proof that the defendants were present during all of the affrays and not only threw stones themselves, but also aided and encouraged the other strikers by their conduct, statements and active participation in the force and violence which was exercised. In our judgment, the demurrer was therefore properly overruled. There is nothing in the authorities cited by appellants in conflict with the foregoing conclusion with respect to the proper joining of the different offenses in the indictment.

■ For the foregoing reasons, we are of the opinion the defendants' motion for directed verdicts was also properly denied. We think there is adequate evidence to show that the defendants were guilty of the riots charged under section 404 of the Penal Code by ''acting together'' in disturbing the public peace by the concerted use of force and violence, to wit, the throwing of large rocks at the persons and automobiles of the employees of the mills. There is substantial evidence that the defendants aided, abetted and encouraged their strik-

ing associates in attacking the employees and in threatening and attempting to intimidate them from pursuing their lawful employment in the mills. Section 31 of the Penal Code makes all persons concerned in the commission of either a misdemeanor or a felony guilty as principals, if they directly commit the offense or aid, abet or encourage its commission.

There is no merit in appellants' contention that the court erred in denying their application for separate trials. Section 1098 of the Penal Code provides in part: ''When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials.'' It has been repeatedly held that a defendant so charged is not entitled as a matter of right to a separate trial. The question of the right to a severance of trial is addressed to the sound discretion of the trial court, with which decision we may not interfere, except upon a clear abuse of that discretion. (*People* v. *Isby*, 30 Cal.2d 879, 897 [186 P.2d 405] ; *People* v. *Goold*, 215 Cal. 763 [12 P.2d 958] ; 4 Cal.Jur. 10-Yr. Supp. (1943 Rev.), § 268, p. 718 ; note, 104 A.L.R. 1519.)

The appellants contend that the court erred in receiving evidence under some of the separate counts charging them with assaults on February 4th, ''by means of force likely to produce great bodily injury, to wit, by throwing rocks at said —— ——,'' and in receiving in evidence the rocks so thrown, without proof that the defendants personally threw them. It is argued that in charging the defendants, as principals, with actually throwing the rocks the prosecution was bound by such allegations and must prove that the defendants themselves threw the rocks, and that evidence of other strikers throwing rocks, on the theory that the defendants aided and abetted the commission of the assaults, or otherwise, was incompetent, citing *People* v. *Carson*, 155 Cal. 164 [99 P. 970], and other similar cases. For the same reason, the appellants claim that the court erred in instructing the jury, in the language of section 31 of the Penal Code, that if the defendants aided, abetted or encouraged the commission of the assaults with rocks by other strikers, they would be deemed to be principals in the assaults, even though there was an absence of proof that the defendants themselves actually threw the rocks. It is asserted section 31 is not applicable to this case in view of the allegations of the indictment. We cannot agree with appellants' contention in that regard. We think the challenged evidence is competent, and that the prosecution

was not precluded from showing that the defendants aided, abetted and encouraged other strikers to commit the assaults by throwing rocks and that they were therefore guilty as principals even though in some instances the throwers of the rocks were not identified. In the last nine counts the defendants were charged with assaults by the throwing of rocks at a specified person named in each count, to wit: Pullen, Schwartz, Gibson, Jackson, Wise, Henderson, Mays, Tennison and Ray. In most cases windshields and windows were broken and the cars were damaged. Several of the drivers of the cars were struck and seriously injured. Half a dozen of them were taken to a hospital and treated. In most cases the defendants were identified by either the drivers of the cars or by other employees of the mill as the persons who actually threw the rocks. In some three or four charges that evidence is lacking. But in no instance is there a lack of evidence that large rocks were thrown at such drivers of machines by some of the strikers. The rocks which were introduced in evidence were identified as those which shattered the windows of the cars and were found in such cars or upon the running boards thereof. We think such rocks were sufficiently identified and properly received in evidence. The motion to strike out that evidence was also properly denied.

The evidence is clear that all of the strikers, including both defendants, assembled at the entrance to the mill before 8 o'clock in the morning with the concerted purpose of attacking the nonunion workmen when they arrived. The strikers lined up on either side of the road and armed themselves with rocks. They bombarded every machine that drove into the premises that morning. The attack was made only with stones, as charged. The acts, conduct and statements of the defendants and other strikers clearly indicate that they all cooperated in each of said alleged assaults. Each of them might have been charged and convicted of the riots and assaults. It is immaterial that only the defendants were so charged. There is no variance from the charges in the use of weapons, to wit, rocks, with which the crimes were perpetrated. No weapons, other than the rocks, were used in committing the assaults. Certainly it may not be asserted that if a defendant picked up a rock and handed it to another one of the strikers, telling him to take it and hurl it at the driver of a car, that the defendant would not be guilty of that assault as a principal. We conclude that, under the circumstances of this case, the defendants became guilty of the assaults as

principals, in spite of the fact that, in three or four instances, the defendants were not definitely identified as the particular persons who threw the rocks. We are convinced that the evidence was competent as a part of a concerted purpose to commit the offenses, and that the court correctly instructed the jury that section 31 of the Penal Code was applicable to this case.

The case of *People* v. *Carson, supra,* upon which the appellants rely, is not in point. The defendant in that case was serving a life sentence at Folsom state prison. He and several other prisoners planned to escape. Several of them were armed with improvised knives. The defendant picked up a chisel, which he claimed he did not use. There was no direct evidence that he did use the chisel. Two guards, Murphy and Jolly, were attacked. The attack was led by prisoners other than the defendant. Both guards were stabbed with knives and overpowered. The prisoners took the guards as a shield and attempted to escape. Some of them were shot and killed. The defendant was captured. He was indicted under section 246 of the Penal Code, as it then existed, but subsequently repealed (Stats. 1941, ch. 106, § 16), for an assault with a deadly weapon, to wit, a chisel. He was convicted and sentenced to the death penalty. Knives found at the scene of the shooting, but not connected with defendant's possession, were received in evidence. The Supreme Court said that ''The *theory of the prosecution* was that appellant, with the other prisoners engaged in the assault, had entered into a conspiracy to escape.'' The evidence showed that ''a conspiracy had been entered into between some of these prisoners to attempt to escape.'' At the trial defendant's objection to evidence of the assaults and conduct of other prisoners, *before proof of any conspiracy* was made, was overruled. On appeal the defendant contended that the evidence of assaults *with knives by the other prisoners* was incompetent and prejudicial and that there was no evidence of an assault by the defendant with a chisel, as alleged in the indictment. The Supreme Court held that the evidence of the conduct and assaults with knives by the other prisoners was competent; that the evidence of a conspiracy to escape from prison was competent to show the *intent* with which the defendant participated in the assault upon the prison officers, and that the knives were properly admitted in evidence. The judgment of conviction was affirmed. The court said:

". . . There was sufficient evidence in the case to warrant the jury in finding that there was a conspiracy among the prisoners . . . and that the defendant was a party to it. . . . Nor was the evidence subject to a motion to strike it out on the ground that as defendant was charged in the indictment specifically with an assault . . . with . . . a chisel . . . he could not be convicted by proof that an assault was made by the other prisoners . . . with knives. . . .

". . . Nor is it of any consequence that the defendant was' charged with an assault with a chisel and not with a knife."

The court further said:

". . . [T]he knife found where defendant fell, together with the other knives found, all in proximity to where the defendant and the other prisoners were gathered, . . . were admissible in evidence, together with all the circumstances accompanying the assault, as bearing on the question of the conspiracy, . . . and also as evidence of the intent with which the assault in general was made by all the prisoners."

In the opinion in the foregoing case the Supreme Court did say, at page 174, with relation to the application of section 31 of the Penal Code, upon the language of which the appellant relied, that:

"But as he [the defendant] was charged with an assault with a weapon of specific character he could only be convicted by proof of an assault made by him with the weapon charged, and the theory of responsibility as an aider and abettor in an assault made by the other prisoners *with other weapons* was neither tenable nor permissible under the indictment against him. But *as appellant does not make any complaint on this appeal as to this theory, . . . it is unnecessary to further discuss the proposition.*" (Italics added.)

It will be observed that the court specifically refrained from determining that suggested principle as to whether a defendant who is definitely charged with an assault with a particular weapon of a specified type might be convicted of *an assault made with an entirely different weapon used by other persons* on the doctrine of aiding and abetting the assault of other persons. The defendant was specifically charged with making the assault with a chisel. The other prisoners actually assaulted and stabbed the officers with improvised knives. What was said by the court about liability of the defendant for merely aiding and abetting his associates is therefore mere dictum. It applies to facts entirely different from those of the present case. In this case there could have been no vari-

ance of proof as to the character of weapons used. In this case the defendants were charged with making the assault with rocks only. There was no proof of any other character of weapon used by either the defendants or their associates. Moreover, the court definitely held in the Carson case that the evidence of the conspiracy to escape was admissible to illustrate any fact involved, to shed light on any issue, to show the *intent* with which the assault was made and to show the nature of the wounds inflicted or the damages incurred as a result of the acts with which the accused person is charged. That rule applies to both civil and criminal cases.

The photographs were also competent. (*Packard* v. *Moore*, 9 Cal.2d 571, 581 [71 P.2d 922] ; Underhill's Criminal Evidence (4th ed.), § 117, p. 157; 8 Cal.Jur. § 223, p. 136; 10 Cal.Jur. § 169, p. 896; 23 C.J.S. § 852, p. 51; 159 A.L.R., p. 1414, note.) In the Packard case, *supra,* which was a suit for personal injuries received as the result of an automobile collision, a photograph of plaintiff taken while she was in the hospital, showing the wound on her face which was received in the accident, was admitted in evidence over defendant's objection. The court said:

"Appellant's objection to the introduction of photographs of the plaintiff showing the nature of the injuries upon her face while in the hospital is without merit. The photographs portrayed possibly more strikingly plaintiff's injuries than oral testimony could have done. This fact did not render them inadmissible. The jury was entitled to know of her true condition and if that fact could be more accurately portrayed by photographs than by the testimony of the doctor, or others, it was the right of the plaintiff to resort to that method of proof. (Citing authorities.) "

The sufficiency of the preliminary proof for admission of a photograph is within the sound discretion of the trial judge, and where there is substantial evidence of adequate foundation for its admission, that discretion will not be interfered with on appeal. (10 Cal.Jur. § 169, p. 896.) It would seem to follow that if a photograph of a person is competent to show the condition of a wound on the face, as it was in the Packard case, upon the same principle a photograph showing the damages incurred to automobiles as a result of unlawful assaults by means of throwing rocks should also be competent. The photographs of the automobiles were taken immediately after the assaults occurred. There is ample evidence to show

they were in the condition which existed immediately following the assaults. Photographs are competent for the same reason that diagrams and maps are admissible to show the relative location of objects and the surrounding physical conditions. Photographs of weapons, instruments and objects involved in the issues are likewise admissible for similar purposes. (*People* v. *Carson, supra; People* v. *Shaver,* 7 Cal.2d 586, 591 [61 P.2d 1170]; *People* v. *Sambrano,* 33 Cal.App.2d 200, 213 [91 P.2d 221]; *People* v. *Singh,* 78 Cal.App. 476, 483 [248 P. 981]; *People* v. *Jackson,* 74 Cal.App.2d 22, 25 [167 P.2d 776].) The court did not err in receiving the photographs in evidence.

The case of *People* v. *McCall,* 10 Cal.App.2d 503 [52 P.2d 500], upon which appellants rely in support of their assertion that the court erred in receiving in evidence the photographs, is not in point. In that case the defendant was charged and convicted of manslaughter. He and the deceased were intoxicated and driving together in the latter's automobile. No other person was present. The question of a conspiracy or of other persons cooperating in the assault was not involved. No other person could have used any weapon in that assault. The deceased, Hubbard, was driving. The car stalled. Hubbard got out and cranked it. McCall, the defendant, took the driver's seat. The deceased insisted on continuing to drive the car. A controversy arose. "McCall got out of the car and hit Hubbard two or three times on the face, knocking him to the pavement." He was taken to a hospital and died. The skull was found to be fractured. An automobile jack, wrench and tire-iron were found in the back of the car. They were received in evidence over the objection of the defendant. The court said, "There was no evidence which connected the appellant with any of the implements. The car was not his." The court concluded that it was prejudicial "to exhibit to the jury all of the implements that were found in the car of the deceased, *upon the sole ground that if any one of them had been used, it might have caused the injury which resulted in death.*" The judgment was reversed on that ground. In the present case evidence of the injuries to persons and the damages to their cars were shown to have been caused by the rocks which were actually thrown by the defendants or by their associates with whom they were then unlawfully acting in a common cause or purpose to commit the offenses.

Other cases cited by the appellants upon that issue may be similarly distinguished.

Finally, a motion in arrest of judgment was made on the previously stated grounds. For the reasons heretofore assigned, that motion was properly denied.

The judgment and the order denying a new trial are affirmed.

Adams, P. J., and Peek, J., concurred.

A petition for rehearing was denied October 13, 1948, and the opinion was modified to read as above printed. Appellants' petition for hearing by the Supreme Court was denied October 25, 1948. Carter, J., voted for a hearing.